CHARLES B. PATTERSON v. DANIEL LAMB.

Decided June 14, 1899.

1.  **Declarations of Testator—Undue Influence.**

Declarations of a testator as to his testamentary intention, whether made before or after, or at the time of making, a will, are admissible on the issue of undue influence, as well as that of testamentary capacity.

2.  **Burden of Proof—Execution of Will.**

The burden of proof as to undue influence exercised in procuring the execution of a will is upon the party alleging such influence.

3.  **Will—Undue Influence.**

Undue influence, in order to vitiate a will, must amount to moral coercion, and be such as constrains the testator to do what is against his purpose and desire. See the opinion for facts held not to show that the testator was unduly influenced.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHALL.

*M. W. Stanton* and *Falvey & Davis,* for appellant.

*W. M. Caldwell* and *Turney & Burges,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Chas. B. Patterson in the County Court to probate the will of James Burns, deceased, which was executed on the 24th day of July, 1897, by which appellant was made the principal legatee.

The appellee, Daniel Lamb, filed his contest to such application, in which he pleaded, (1) a general denial; (2) want of mental capacity to execute the will; (3) fraud on the part of applicant in procuring the execution of said will; and (4) undue influence exercised by appellant upon the deceased in procuring its execution.

The application and the contest was heard in the County Court, and there an order was entered admitting the alleged will to probate, from which judgment Daniel Lamb, the contestant, appealed to the District Court, where the case was tried upon the same pleadings by the judge without a jury, and the trial resulted in a judgment denying the probate of the will; from which judgment the appellant Chas. B. Patterson has appealed to this court.

The conclusions of fact filed by the trial judge are as follows:

"1. That James Burns is now dead. 2. That Daniel Lamb was the half brother of James Burns, deceased. 3. That on the 24th day of July, 1897, the date of the execution of the will produced in this case, James Burns, deceased, was of sound mind and disposing memory. 4. That on the 24th day of July, 1897, James Burns, deceased, executed the will produced in court, in favor of Chas. B. Patterson; that the said will was read to him; that the said James Burns, deceased, then and there understood its contents. 5. That by reason of the condition, circumstance, and relation between the deceased and Chas. B. Patterson and Geo. E. Wallace, at the time of the execution of said will, deceased was

unduly influenced to execute the said will, but that the same did not represent his real wishes and desires in the matter."

We concur in all these conclusions of fact save the fifth, and will add that the evidence disclosed by the record is sufficient to show that Daniel Lamb, the half brother of deceased, and his children were the only surviving relatives of James Burns.

*Conclusions of Law.*—While the authorities are in conflict, we think, upon their weight and principle, that declarations of an alleged testator as to his testamentary intention, whether made before, after, or at the time of making an alleged will, are admissible on the issue of undue influence, as well as that of testamentary capacity. Jackson v. Kniffen, 3 Am. Dec., 397, and authorities cited in note 3; 7 Am. and Eng. Enc. of Law, 73; Collagan v. Burns, 57 Me., 449; Roberts v. Trawick, 17 Ala., 55; Campbell v. Trent, 90 Va., 849; Beach on Wills, sec. 115; Schoul. on Wills, sec. 243; Shailer v. Bumstead, 99 Mass., 121; Waterman v. Whitney, 11 N. Y., 166; Mooney v. Olsen, 22 Kan., 77.

Such declarations are not admissible as primary proof that the testator was influenced in making the will by fraud or compulsion, for in such relations they are regarded as hearsay. But while they are not admissible to prove the actual fact of fraud or improper influence, they are competent to establish the influence and effect of the external acts (if any are shown) upon the mind of the testator himself. Campbell v. Barrera, 32 S. W. Rep., 725; Shailer v. Bumstead, 99 Mass., supra; Schoul. on Wills, sec. 243.

We therefore hold that the declarations of James Burns, the admission in evidence of which are complained of in appellant's first assignment of error, to the effect that Daniel Lamb and his two daughters would get his property after his death, and that he wanted them to have it, was properly admitted by the court upon the issue of undue influence, as well as that of testamentary capacity.

"Undue influence is defined as that which compels the testator to do that which is against his will from fear, the desire of peace, or some feeling which he is unable to resist. We say that the influence must be undue in order to vitiate the instrument, because influence of one kind and another surround every rational being, and operate necessarily in determining his course of conduct under every relation of life." Schoul. on Wills, sec. 227. Undue influence, legally speaking, must be such as in some measure destroys the free agency of the testator. It must be sufficient to prevent the exercise of that discretion which the law requires in relation to every testamentary disposition. It is not enough that the testator is dissuaded by solicitation or argument from disposing of his property as he previously intended; he may yield to the persuasion of affection or attachment, and allow that sway to be exercised over his mind; and in neither of these cases would the law regard the influence as undue. To amount to this, it must be equivalent to moral coercion—

it must constrain its subject to do what is against his will, but which from fear, the desire of peace, or some other feeling, he was unable to resist, and when this is so, the act which is the result of that influence is vitiated. Gilbert v. Gilbert, 22 Ala., 529. In the absence of fraud, no matter what influence may be exercised on a testator, so long as it does not overpower his inclinations and judgment, and induce a disposition of his property contrary to his own wishes and desires, his will can not be invalidated for undue influence. Monroe v. Barkley, 17 Ohio St., 302. The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor soundness of his memory. He may do what he will with his own; and if there be no defect in his testamentary capacity, and no undue influence or fraud, the law gives effect to the will, though its provisions are unreasonable and unjust. Clapps v. Fullerton, 34 N. Y., 109, 90 Am. Dec., 682; Jackson v. Jackson, 39 N. Y., 157.

To avoid a will on the ground of undue influence, it must appear that the influence was exercised upon the very act of making the will. The fact that the testator was under the general and even the controlling influence of another person in the conduct of his affairs will not suffice to invalidate the will, unless that influence was specially exerted upon the testamentary act. Small v. Small, 4 Greenl., 220, 16 Am. Dec., 26, and authorities cited in note.

Judge Redfield, after reviewing the cases decided, says: "It is obvious that the influence to avoid a will must be such as, first, to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his; second, that it must be an influence specially directed towards the object of procuring a will in favor of particular parties; third, if any degree of free agency or capacity remained in the testator so that when left to himself he was capable of making a valid will, then the influence which so controls him as to render his making a will of no effect must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty; and it must have proved successful to some extent, certainly." 1 Redf. on Wills, 525.

The burden of proving that undue influence operated upon the will in question lies on the party who alleges it. Schoul. on Wills, sec. 239. It is said in Baldwin v. Parker, 99 Massachusetts, 79, 96 American Decisions, 697: "When the issue of undue influence is a separate and distinct issue, involving proof that the testator, though of sound mind and intending that the instrument which he executes with all the legal formalities shall take effect as his will, was induced to execute it by the controlling power of another, we think the weight of authority and the best reason are in favor of imposing upon the party who alleges the undue influence the burden of proving it." Taylor v. Gardner, 33 N. Y., 559; In re. Yorke's Est., 185 Pa. St., 61, 39 Atl. Rep., 1119; Riley v. Sherwood, 45 S. W. Rep., 1077, 144 Mo., 354; Slater v. Ely, 56 N. Y. Eq., 357, 39 Atl. Rep., 365. Upon this question Lord Crannworth says: "One point, however, is beyond dispute, and that is when once it has been

proven that a will has been executed with due solemnities by a person of competent understanding, and apparently a free agent, the burden of proving that it was executed under undue influence is on the party who alleges it." Boyse v. Rossborough, 6 H. L. Cas., 2. Undue influence can not be presumed or inferred from opportunity or interest, but must be proved to have been exercised, and exercised in relation to the will itself, and not merely in other transactions. Small v. Small, supra; Tyler v. Gardner, supra.

Upon reading and carefully considering all of the testimony set forth in the voluminous statement of facts before us in the light of the well established principles of the law as above set forth, we are constrained to the conclusion that the evidence is wholly insufficient to warrant the trial judge in finding "that by reason of the condition, circumstances, and relation between the deceased and Chas. B. Patterson and Geo. E. Wallace at the time of the execution of said will, deceased was unduly influenced to execute said will, but that the same did not represent his real wishes and desires in the matter," and we find as a conclusion of fact that there is no evidence in the record to show that James Burns was influenced at all, either by Patterson or Wallace to execute the will.

The evidence fully sustains the trial judge in finding that at the date of the execution of the will James Burns was of sound mind and disposing memory, and that he executed the will in favor of Chas. B. Patterson, and that it was read to him, and that he then understood its contents. We then have a case of a man of sound mind and disposing memory who executes a will, which is read to him, the contents of which he understands at the time. After it is executed he goes with Mr. Wallace and himself hands it to Mr. Austin, cashier of a bank, to be kept by him and delivered to Mr. Wallace upon his request. He lived nearly a year after the will was executed, most of the time at his home in El Paso, and could and no doubt would have revoked the will had it not represented his real wishes and desires. It is true Mr. Patterson was his friend and attorney, and co-worker in politics, and held at different times, when they lived in El Paso, the offices of policeman, constable, and city recorder. But there is not a particle of evidence to show that the influence of Mr. Patterson or of Mr. Wallace at any time ever dominated or controlled the will of James Burns, nor influenced him to act contrary to his wishes and desires in a single instance. Nor do we find in the record any evidence to show that Mr. Patterson ever exercised his official position in such a manner, either favorable or unfavorable, as to influence the testator in any of his actions, or to acquire a general controlling influence over him. If it could be inferred that Mr. Patterson by reason of his official position or his relation to the deceased as an attorney, had acquired an undue influence over him, then from that inference (which the testimony does not warrant) we would have to draw a further inference that he unduly influenced Mr. Burns to execute the will in his favor. This would be deducing an inference from an inference, which is contrary to reason and to law. Baldwin v. Goldfrank, 88 Texas, 258. As is said by counsel

for appellant in their brief, "the law will not permit any fact to be inferred from a fact which is itself established by inference from some other or third fact. What fact could not be proven in a court of justice if litigants were permitted to prove one fact by direct evidence, and to properly infer from that a second fact, and then to infer a third fact from the second, and then a fourth fact from the third, ad infinitum? The enforcement of the law would be so abstruse and intricate that it would be absolutely impossible to administer justice, or even dispose of the business before the courts."

There is no evidence that Mr. Patterson ever spoke to Burns about making a will, or that he knew that the will was even contemplated until after its execution. If his testimony is to be believed (and it is not inconsistent with any fact in the record), he never in any way endeavored to influence Burns to will his property to him, and he knew nothing about such will until after it was drawn, its contents read to the testator, and it was executed by him. Nor is there anything tending to show collusion between appellant and Mr. Wallace to have the will drafted by the latter, and for him to procure its execution by the testator.

That Burns was old, a keeper of disorderly houses, feeble in health, and wasted by disease, when shown to be of stubborn will and vigorous mind at the date of the execution of the will, are not, in the absence of direct proof of undue influence, sufficient to raise a presumption that he was not a free agent at the time the will was made, and that it was not a free and intelligent product of his mind. Nor are the facts that he had previously made a will devising his property to contestant and his family, and his declaration that his property at his death would go to Lamb and his daughters (if such evidence can be considered as tending to prove anything more than the feelings and affection of the testator), when taken and considered with all the evidence in this case, sufficient to show that the will was made under undue influence amounting to force and coercion, such as to destroy the free agency of the testator.

The judgment of the District Court refusing to admit the will in question to probate, is reversed, and judgment is here rendered in favor of appellants probating said will.

*Reversed and rendered.*

Writ of error refused.