## S. N. MORRISON v. G. S. W. THOMAN ET AL.

### No. 1445.    Decided October 30, 1905.

**1.—Will—Undue Influence—Fraud.**

A wife executed a will leaving her interest in the community property absolutely to her husband, but with an expression of her confidence that he would make final disposition of the common estate remaining at his death in accordance with her present wishes, as they might be affected by changed conditions. She had desired that the property be entailed upon the death of both upon her children and grandchildren by a former marriage and the nephew of her husband, they having no children by this marriage, but was advised that this could not legally be done. There was a tacit understanding between them that the survivor would leave the property remaining on his or her

death to these relatives, and evidence that she was led to execute the will by this understanding and tending to show that the husband did not intend at the time to carry it out. Held, on a contest of the will, that the evidence did not justify the submission of the issue as to undue influence of testatrix by the husband, but that it did require the submission of the issue whether the execution of the will was obtained by fraud on his part. (Pp. 255–258.)

**2.—Same—Trust—Avoiding Will.**

The fact that the circumstances relied on to avoid a will would be equally available to create a trust in favor of the contestants under the will does not deprive them of the right to elect which of these remedies they may prefer. (Pp. 258, 259.)

Certificate of dissent from the Court of Civil Appeals for the Second District, in an appeal from Jones County.

*Bowyer & Fillett, Steele & Stinson, Sayles & Sayles* and *Theodore Mack,* for appellant.—If it had been true that Morrison had promised and agreed with his wife, that if she would give him all her property absolutely, that he would, at his death, devise not only her estate but also his own, in part, to her children and grandchildren and Sam Morrison, and that such promise influenced her to execute the paper writing, and such influence was too powerful for her to resist, still it was error for the court to instruct the jury, if those statements be true, that they should find that the paper writing was not the last will and testament of Mrs. Mary C. Morrison. Such promises if made would only create a trust. The charge of the court must conform to the pleadings and evidence, and must not raise an issue not presented in the pleadings nor raised by the evidence. The appellee, Mrs. Thoman, asked in her pleadings that the will be set aside for and on account of promises made and alleged to have been fraudulent, because when made there was no intention to carry them out. Equitable Life Insurance Co. v. Hazlewood, 75 Texas, 38; Cannon v. Cannon, 66 Texas, 682.

If a beneficiary promises a testator to make a certain disposition of property in consideration that the testator make him the beneficiary, then such promise, if it induces the testator to make a disposition of his property, will create a trust; but will not be grounds for annulling the will for undue influence. McMurray v. Stanley, 69 Texas, 228; Jarman on Wills (6th ed.), 390.

The existence of a trust will not authorize a court to charge a jury to set aside a will on account of such trust. It was error on the part of the court to make it the duty of the jury to set aside Mrs. Morrison's will if it was induced by a promise from her husband, S. N. Morrison, that he would at his death devise all the property (hers as well as his own), in part to her children and grandchildren and to Sam Morrison. McMurray v. Stanley, 69 Texas, 234; Collins v. Hope, 20 Ohio Reports, 493; Orth v. Orth, 32 Lawyer's Reports Annotated, 298; Allman v. Pigg, 25 American Reports, 303.

It is not proper to give a charge when no evidence is introduced to authorize such instruction, and thus raise a false issue. There is no evidence that authorized the court in submitting the question of fraud to the jury.

The definition of undue influence has been so often announced by the courts that we deem it unnecessary to attempt either to improve upon

definitions already given or to quote authorities. However, we refer to volume 8, Words and Phrases, pages 7166-7, as well as to the case of Wetz v. Schneider, 78 S. W. Rep., 394-6.

The record discloses by a chain of undisputed facts, that the instrument admitted to probate, was suggested in all its details by Mrs. Morrison. That she was a woman of unusual strength of mind and business judgment, and that she understood the instrument fully and its effects in the future. That it was her wish to vest in her husband the fee simple title to all, and to depend upon his good judgment to make, when he came to die, a wise disposition of what was left among those who ought to receive the bounty. No doctrine seems to be better settled than that parol testimony aliunde and declarations of the testatrix can not be received to explain, vary or contradict such a will. Hunt v. White, 24 Texas, 643; Farrar v. Ayres (Mass.), 5 Pickering's Rep., 409; Avery v. Chappel, 6 Conn., 275; Pocock v. Redinger, 108 Indiana, 575; Abercrombie v. Abercrombie, 27 Alabama, 495; Bingel v. Volz, 142 Illinois, 222; Mersman v. Mersman, 136 Missouri, 256; Clarke v. Clarke, 46 South Carolina, 240; Frick v. Frick, 82 Maryland, 222; In re Denfield et al, petitioners, 156 Mass. 266; Rapp v. Reehling (Sup. Ct. of Indiana), 23 Northeastern Rep., 779; Taylor v. Pegram (Sup. Ct. of Ill.), 37 Southeastern, 840; Kaenders v. Montague (Sup. Ct. of Ill.), 54 Northeastern, 323; Schouler on Wills, secs. 567, 568, 569, 580; Redfield on the Law of Wills, p. 559; Taylor on Evidence, vol. 2, p. 808.

It is elementary that the construction of a will is governed by the general rules of contracts. That parol evidence will not be heard to contradict or vary any provision, speaking the interpretation of the parties, as to the particular subject matter arranged. There can be no dispute that the will vests the fee of the estate in the appellant, S. N. Morrison; that it leaves the disposition of the property wholly to his discretion. It is unquestionably true that contestant is seeking to destroy the title as defined by the will, by the declarations of her mother, after the will was made, giving to it an interpretation wholly different and entirely contradictory of the language of the instrument itself. To do so, would, it is believed, upset the long established rules affecting wills. See authorities last cited, Hunt v. White; also the following authorities governing contracts generally: Wooters v. International & G. N. Ry. Co., 54 Texas, 299; Heirs of Watrous v. McKie, 54 Texas, 71, 72; Lanius v. Shuber, 77 Texas, 27; Fry v. National Glass Co. (Sup. Ct. of Penn.), 56 Atlantic, 1065; Knowlton v. Campbell (Sup. Ct. of App. of W. Va.), 37 Southeastern Rep., 582; Maupin v. Scottish U. Ins. Co. (Sup. Ct. of App. of W. Va.), 45 Southeastern Rep., 1004; Merritt v. Peninsular Con. Co., 91 Maryland, 464; Bruce v. Fulton Nat. Bank, 79 New York, 165; Arthur v. Baron de Hirsch Fund, 121 Fed. Rep., 795; Godkin v. Monahan, 83 Fed. Rep., 118; McCall Co. v. Jennings (Sup. Ct. of Utah), 73 Pacific Rep., 641; Osgood v. Skinner (Sup. Ct. Ill.), 71 N. E., 873.

We think the very most that could in the end be contended, would be that the discussions between appellant and his wife, the testatrix, created a trust on what remained at the time of appellant's death. Contestant,

in this suit, makes no attempt to create a trust, but seeks to destroy her mother's will. It is believed that even after appellant Morrison's death, a trust could not be created, for the unexpressed desires of his wife referred to in her will are not mandatory, but she trusted him with the full discretion to dispose of the property as he pleased. McMurray v. Stanley, 69 Texas, 227; Thurston's Admr. v. Prather, 77 Southwestern Rep., 354, and a long list of authorities cited there; Orth v. Orth, 32 Lawyers' Rep. Annotated, 298; Allman v. Pigg, 25 American Repts., 304; Collins v. Hope, 20 Ohio Rep., 493, cited in Charch v. Charch, 57 Ohio St., 579.

As to the ultimate disposition that the survivor should make of the property that remained, there can be no doubt that Mr. and Mrs. Morrison both expected, that it would in the end be equitably and wisely distributed among those whom they had discussed, as being entitled to their bounty. This they mutually trusted to each other, and it is manifest from the record, that neither desired any restrictions upon the other. In this connection we beg to quote a single paragraph from an opinion of the Supreme Court of Illinois, in a will case very similar to this: "As to the ultimate disposition of the property, there is no doubt he expected his wife to make an equitable distribution of what she should not consume, among their children, and it may be they had between themselves some understanding how that ought to be. But he trusted this all to her, and there is no evidence he desired other restrictions upon her than those contained in the will." Allman v. Pigg, 25 Am. Repts., 304.

The very language employed by Mrs. Morrison in her will, "I am aware of the fact that conditions might change making it injudicious to carry out my present wishes as to the final disposition of the property my husband may inherit from me and have left when he dies, and for this reason I have given all my property to my husband absolutely, leaving it wholly to his discretion to dispose of it as he wishes," precludes the idea that there were any promises made by her husband upon which she relied. It follows, logically, that if there were no such promises, fraud can not be based upon promises. But there is a total absence of proof that promises were made. We cite Sullivan v. Sullivan, Irish Report, vol. 1, 1903, p. 201; McCormick v. Grogan, L. R., 4, H. L., 82, 17 Weekly Reporter (1868-9), p. 961, L. R., 4, Eng. & Irish App., 82; see also same case Irish Reports (Equity), vol. 1, p. 313.

*W. B. Paddock, Mattock, Miller & Dycus* and *Cunningham & Oliver,* for appellees.—If the jury should find Mr. Morrison had agreed with and promised his wife, that if she would make him her sole devisee he could better manage and control her property, and would at his death leave not only her property but his estate as well, to her children and grandchildren, and Sam Morrison and others, and without which promise and agreement she would not have so willed her property to him, the court having properly defined and limited the term "undue influence," was authorized to submit to the jury, whether or not such promise and agreement constituted undue influence. Dunaway v. Smoot, 67 S. W., 62; Brown v. Pridgen, 56 Texas, 124.

On an issue of fraud in the procurement of the execution of a will, the jury is entitled to pass on all questions of fact arising from the evidence and which tends to a determination of that issue. Brown v. Pridgen, 56 Texas, 124; Trezevant v. Rains, 85 Texas, 329; Brown v. Mitchell, 88 Texas, 350; Blackman v. Edsall, 68 Pac., 790; Bailey v. Bailey, 82 S. W., 387; Barry v. Graciette, 71 S. W., 310; Underhill on Wills, pp. 215-217.

A question arising upon testimony becomes a question of law to be decided by the court, when the facts are undisputed and admit of but one inference regarding the conclusions to be drawn from such facts. "In other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Lee v. International & G. N. Ry. Co., 89 Texas, 588; Wallace v. Southern Cotton Oil Co., 91 Texas, 18; Baltimore & O. R. R. Co. v. Kane, 69 Md., 11; Grand Trunk Ry. Co. v. Ives, 144 U. S., 417; Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas, 547; Chatham v. Jones, 69 Texas, 746.

Any means, promise or otherwise, whereby one person obtains control of the will of another and substitutes his will for the other's will, and deprives the other of free agency and induces the other to do what, without this means he would not have done, may and does constitute undue influence. A very instructive case upon this point is Gordon v. Burris, 141 Mo., 618.

When the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him, to be by him applied to the benefit of others, it has all the force and effect of an express promise. Wallgrave v. Tebbs, 2 K. & J., 321; Schultz's App., 80 Penn. St., 405; Matter of O'Hara, 95 N. Y., 412.

There can be no question from the testimony in the case but that, to induce the testatrix to change her mind with reference to the disposition of her property and to devise it to him, appellant made her a promise, express as well as implied, that at his death he would dispose of her property and his in the manner in which she desired hers to be disposed of.

Fraud will vitiate a will. And such fraud, it is held, need not be proved by positive and direct testimony; but every fact, howsoever slight, bearing at all upon the point, and not wholly irrelevant, may be admitted, provided that they are strong enough, when combined, to satisfy the jury of the existence and operations of the fraud. Schouler on Wills, sec. 241.

From the necessity of the case, juries must be left to decide the questions of fraud and undue influence from isolated circumstances. To hold otherwise, would be to hold that a will may never be attacked upon the ground of fraud or undue influence. This idea is aptly expressed by the Court of Appeals of Colorado, in Blackman v. Edsall, 68 Pac., 792.

What would amount to undue influence exercised upon one person, in the condition Mrs. Morrison is shown to have been at the time Morrison made his promises to her, would have no effect at all upon another. By mental capacity we do not refer to a lack of testamentary capacity,

because one may have testamentary capacity and be mentally very weak. Dunaway v. Smoot, 67 S. W., 62; Schouler on Wills, sec. 228; Campbell v. Barrera, 32 S. W. Rep., 724.

Undue influence need not be proved directly, but may be, and frequently is, proved circumstantially. Trezevant v. Rains, 85 Texas, 330; Brown v. Pridgen, 56 Texas, 127; Reynolds v. Root, 62 Barb., 250; Titlow v. Titlow, 54 Penn. St., 216; Woodbury v. Woodbury, 141 Mass., 33; Tyler v. Gardiner, 35 N. Y., 582; Higginbotham v. Higginbotham, 17 So., 516; Delafield v. Parish, 25 N. Y., 9.

The making of the false promise, which the promisor at the time of making it did not intend to keep, may be the basis of a charge of fraud. Bigelow on Fraud, p. 484, chapter 1, sec. 4; Goodwin v. Horne, 60 N. H., 485; Allen v. Hartfield, 76 Ill., 358; Newell v. Newell, 14 Kansas, 202; Douthitt v. Applegate, 33 Kansas, 395; Green v. Green, 34 Kansas, 740; Abbott v. Abbott, 18 Neb., 503; Oakley v. Ritchie, 69 Ia., 69; Touchstone v. Staggs, 39 S. W., 189.

Appellees also called attention to the cases of Dausman v. Rankin, 88 S. W. Rep., 696-705, and Bradford v. Blossom, 88 S. W. Rep., 721, advance sheets, decided after submission of the case.

BROWN, Associate Justice.—This case comes to us on the following certificate: "It is ordered by the court that the motion of appellees to certify to the Supreme Court for decision the questions of dissent, as shown in the opinion heretofore filed in this cause, be granted, to wit: (1) whether or not the court erred in giving the charge quoted in said opinion on the issue of undue influence; (2) whether or not the court erred in giving the charge quoted in said opinion on the issue of fraud. That is to say, whether or not the evidence raised these issues, and if it did raise the issue of undue influence, whether or not the charge referred to submitting that issue was correct."

The charges submitted and a statement of the case are embodied in the opinion of the majority of the court, which we copy:

"This appeal is from a judgment of the district court of Jones County, on appeal from the county court, annulling an order of the county court probating the will of Mrs. Mary C. Morrison, who died in said county on the 22d day of March, 1899. The will was executed by Mary C. Morrison with all the formalities of law, on February 19, 1896, and was duly probated in October, 1899. The will, omitting formal parts, is as follows:

" '1st. All the property that I have of every nature whatsoever, is the community property of my husband, S. N. Morrison and myself.

" '2d. I give and bequeath to my beloved husband, S. N. Morrison, all the property that I may die possessed of, real, personal and mixed, and of every nature whatsoever.

" '3d. I nominate and appoint my husband sole executor of this will, and direct that no security shall be required of him as executor.

" '4th. It is my will that no other action be had in the courts in the administration of my estate, than to prove and record this will and to return an inventory and appraisement of my estate and list of claims.

" '5th. Husband and I have talked over the disposition that we

would like to make of what the survivor of us has left after he or she dies, and having implicit confidence in my husband I leave it to him to make such disposition. I am aware of the fact that conditions might change, making it injudicious to carry out my present wishes as to the final disposition of the property my husband might inherit from me and have left when he dies, and for this reason I have given all my property to my husband absolutely, leaving it wholly to his discretion to dispose of it as he wishes.' "

"The testatrix and appellant were married in 1873, and their community estate, neither having any other, amounted to something more than $5,000 at the time of Mary C. Morrison's death, and this has since been materially increased. There was no issue of the marriage with appellant, but at the time of her death she left surviving her as the issue of a former marriage, the appellee, Mrs. Thoman, a son, C. S. Walker, and two minor grandchildren, Dolly and Maurice Carter, the issue of a deceased daughter. The appellee, Mrs. Thoman, is a feme sole, and her action was instituted against the surviving husband, S. N. Morrison, C. S. Walker, and said Dolly and Maurice Carter. The will and its probating order are contested upon the grounds that the execution of the will was secured by undue influence exercised by appellant, and also on the ground of fraud, in that without purpose of fulfillment appellant promised Mary C. Morrison that he would provide for appellee and said testatrix's said other heirs during his lifetime, and at his death would leave to be divided among them the greater part, not only of her estate so to be devised to him, but his own estate as well, in the proportion she had expressed wish to give them.

"The court thus submitted the issues:

" 'If you find and believe from the evidence that, prior to the time of the execution of the paper writing, which has been probated as the last will and testament of Mrs. Mary C. Morrison, deceased, and which is involved in this suit, the said Mary C. Morrison desired to make a different disposition of her property from what is made in said paper writing, dated the 19th day of February, 1896, and herein in controversy, and that the said defendant, S. N. Morrison, desired that the said Mary C. Morrison should devise the whole of her property to him absolutely as her sole legatee, and in order to effect said desire the said defendant, S. N. Morrison, promised and agreed with the said Mrs. Mary Morrison that, if she would devise her said estate to him absolutely as her sole legatee, to the exclusion of her children and grandchildren, he would, at his death, devise not only her estate but also his own estate, in part, to her children and grandchildren and to his nephew, Sam Morrison; and that such promise and agreement so made, if you find they were made, actually influenced the said Mary C. Morrison to execute the paper writing, which has been so probated as her last will and testament, and exerted such influence as was too powerful for the mind of the said Mrs. Mary C. Morrison to resist; and that the said promise and agreement so made, if they were made, constituted undue influence, as hereinbefore defined, then you will find for the plaintiff that the execution of said paper was procured by undue influence and is not the last will and testament of Mrs. Mary C. Morrison, deceased.

" 'If you find and believe from a preponderance of the evidence that, prior to the time of the execution of the paper writing herein in controversy, which has been probated as the last will and testament of Mrs. Mary C. Morrison, the said Mrs. Mary C. Morrison, now deceased, desired to make a different testamentary disposition of her property from what is made in said paper writing, and that the defendant, S. N. Morrison, desired her to devise same to him absolutely, and in order to do so, the said defendant, S. N. Morrison, promised the said Mrs. Mary C. Morrison, now deceased, and agreed with her, that if she would devise the whole of said property to him absolutely as her sole legatee, he would at his death devise said property, or a part thereof, to her children, Mrs. Georgia Thoman and Charley S. Walker, and her grandchildren, Dolly Carter and Maurice Carter; and that the said defendant S. N. Morrison, fraudulently made the said promise with the intention and purpose not to keep it, and with the intention and purpose of influencing the action of the said Mrs. Mary C. Morrison, and that the said Mrs. Mary C. Morrison relied on the said promise so made, if it was made, and that the same did actually influence her to execute the paper writing herein in controversy, and that, without said promise, if it was made, she would not have executed said paper writing, then you will find that the said paper writing was procured by fraud, and is not the last will and testament of the said Mrs. Mary C. Morrison.' "

After discussing the facts the majority of the court expressed the following conclusion:

"In short, we find nothing in all the evidence that in our judgment even tends to show that the execution of the will in question was procured by either undue influence or fraud on appellant's part, and such being our conviction, it follows that the judgment should be reversed and here rendered for appellant.

"Justice Speer does not concur in the above conclusions, but thinks the circumstances in evidence, when considered together, are sufficient to require the submission of the issues of undue influence and fraud, and that the charge given was correct."

The undisputed evidence establishes these facts: The testatrix was a widow, Mrs. Mary C. Walker, residing in the State of Arkansas, with three children, Georgia (Mrs. Thoman), Charles and Lillie, the mother of Dolly and Maurice Carter, and she was married in 1873 to S. N. Morrison, the appellant in this case. At the time of the marriage Georgia was away from home at school and has never lived in the family since, except one year, when she was about sixteen years old, after which she left her mother's home and married while away. In 1885, Morrison and his wife, with the daughter, Lillie, removed to Jones County, Texas; Charles, the son, being then twenty-one years old, chose to remain in the State of Arkansas, but in the course of a few years he joined his mother in Jones County, and has lived with and near them since that time. Mrs. Thoman visited her mother once in Texas. Morrison and his wife accumulated real and personal property which, at the death of Mrs. Morrison, was worth the sum of $50,000. The property was regarded and treated by the parties as belonging to the community. The

daughter, Lillie, married Webb Carter, and, after the birth of two children, died, the children being taken by their grandmother where they remained up to the death of Mrs. Morrison, and since that time they have been under the care of Mr. Morrison. Mrs. Morrison was a very industrious and intelligent woman, not very strong, but she was able to perform the labors of housewife upon the farm until about the year 1896, when her health became impaired and she and her husband visited a physician in Taylor County for advice as to her condition. The physician advised her to go to Chicago to receive treatment, and perhaps to undergo an operation. . Mr. and Mrs. Morrison then consulted together as to the propriety of making their wills and as to the character of the wills. It was first agreed that each should devise his or her property to the other for life, with full power to sell it, and that each will should devise the property which might remain upon the death of the survivor, to Mrs. Morrison's two children, Georgia and Charles, to the grandchildren Dolly and Maurice, with limitations as stated below, and to Sam Morrison, Jr., a nephew of Mr. Morrison, absolutely. Some minor bequests were named which were to be given absolutely. For the purpose of having the wills prepared they visited Mr. Henry Sayles, Sr., of Abilene, Texas, a practicing lawyer there, and, upon going into his office, Mr. Morrison introduced his wife, stated the object of their visit, that his will was to be the same as his wife's and then retired. Mrs. Morrison in a clear and intelligent manner stated to Mr. Sayles what disposition they desired to be made of the property and the limitations that should be placed on the estates of her children. She stated that she wished to so arrange the wills that the property which would go to Mrs. Thoman and her son Charles, should be entailed so that it would never pass out of the family. Mr. Sayles informed her that such a will would be contrary to the laws of Texas; she was very much disappointed, and after a consultation between herself and husband, Mr. Sayles was instructed to draw a will for each which would come as near doing what Mrs. Morrison desired as the law would permit. He drew the wills in the form that he thought would as far as possible comply with the wishes of Mrs. Morrison and at the same time be within the provisions of the law, and those two drafts were submitted to the examination of Mr. and Mrs. Morrison. Upon examination Mrs. Morrison did not approve of the wills, and after some little time, they returned to Abilene and told Mr. Sayles that the wills that had been prepared for each of them did not suit Mrs. Morrison, and that they had concluded for each to make a will giving the property to the other absolutely. In the absence of her husband, Mr. Sayles advised Mrs. Morrison that the will she suggested would place it in the power of Mr. Morrison to devise the property to any person that he might choose, to which she replied that she had all confidence in Mr. Morrison's doing right and making a proper disposition of the property in the end. The wills were prepared for each, Mr. Morrison and his wife, in every essential particular alike and both were executed on that day. There had been no change in the purpose of Mrs. Morrison and Morrison as to the final disposition of the property, and it was understood between them at the time that the survivor of them would so dispose of the property that at his or her death it would

go to the persons named, that is, to Mrs. Morrison's children, grand-children, and Sam Morrison, Jr., but it was to be left to the discretion of such survivor as to the proportion of the property and character of estate to be given to each. If Mrs. Morrison had not believed at the time she executed the will that her husband would give the property at his death to her children and Sam Morrison, Jr., she would not have executed the will, and Morrison knew at the time that she would not have executed it but for that understanding, and he did not in any way object to the arrangement or suggest that it might not be carried out. When the wills were signed each party understood the words "to make such disposition," to refer to the giving of the property to the children and grandchildren of Mrs. Morrison, and to Sam Morrison, Jr.

At the time that Mrs. Morrison executed the will in question, she was suffering from a disease of a very serious character, and had in view a trip to Chicago for the purpose of undergoing an operation. She went to Chicago, the operation was performed and her health was very much improved for several years. In March, 1899, she died, without having revoked or in any manner changed her will. Appellant and his wife lived happily together and she had entire confidence in him.

There is evidence in the record which would support a finding by the jury of the following facts:

There was a tacit agreement between Morrison and his wife, that the survivor of them should use the property belonging to the estate during his or her lifetime with the power to sell and dispose of it, and that at his or her death the survivor would devise the property to the children and grandchildren of Mrs. Morrison's and to Sam Morrison, Jr. The portions given to Mrs. Morrison's children, Mrs. Thoman and Charles Walker, were to be given for life with limitations to their heirs after their death, and might be so limited or not to the grandchildren, as their circumstances and conditions might suggest as best; Sam Morrison's part was to be given absolutely. The purposes of giving the property absolutely, by the terms of the will, were to enable the survivor better to manage the estate for the benefit of all and make such disposi-tions among the legatees agreed upon as justice and right might dictate, considering the conditions of their families, health, etc.

During her lifetime and after the will was made, Mrs. Morrison frequently spoke to others of having made her will, saying that she had provided for her children.

The next morning after Mrs. Morrison was buried, the appellant called Charles Walker to him and asked him, in substance, if he knew everything there was his, Morrison's, to which Charles replied, in sub-stance, that he had not thought about it; and then Morrison said she left a will leaving everything here to me and I have a right to leave it at my death to whoever I please. Morrison did not tell Charles at the time anything about the understanding between himself and his de-ceased wife, as to the giving of the property to her children and grand-children at Morrison's death. Some months after Mrs. Morrison died, appellant talked to Mrs. Winters, the mother of Charles Walker's wife, about the will of Mrs. Morrison, but did not state anything about the

understanding between himself and his wife as to how the property should be disposed of at his death.

Mrs. Thoman's husband died some months after her mother's death, and she began to inquire about her mother's property by letters written to Charles, her brother, to his wife, and also to Mr. Morrison. After this correspondence began Morrison told Charles that his sister, Mrs. Thoman, thought she was very smart, but that she would not get any of the property, and also told Mrs. Winters that she and her husband had better look after Minnie, Charles Walker's wife, because he and Charles could not get along well together, and he might turn him off any day.

Morrison did not answer the letters of Mrs. Thoman and did not give her any information as to the agreement between himself and his deceased wife with reference to the disposition of the property, but finally wrote to her the following letter: "Abilene, Texas, Sept. 20, 1900. Dear Georgia: Your letters of recent date have been duly received and contents have been duly considered. From the line of your several letters I could not see that a letter from me would avail anything. You are aware that I do not recognize that you have any rights or interest in your mother's estate. You know that prior to your mother's death she made a will disposing of all her property and I have been informed that you have a correct copy of the will; if you have not I will furnish you with one at any time; according to the laws of Texas the property goes according to the will. I would regret very much for the wisdom and justice of my wife's will to be questioned in the courts of our country. Yet I shall not do anything to prevent a full investigation, though I fear this would force me to bring before the courts our many, many troubles, and my great expenditures of money which runs well up into the thousands; but if you are not satisfied with your own mother's will, the courts of Texas are open to you, and I have nothing to cover up. I remain, well wisher and best friend, S. N. Morrison."

We answer the questions submitted as follows:

First. The trial court erred in submitting to the jury the issue of "undue influence," because there was not sufficient evidence to justify the submission of the question.

Second. The trial court did not err in submitting the issue of fraud to the jury. There were before the jury facts and circumstances from which they could find that Morrison induced his wife to make the will in issue by a tacit agreement upon which she relied, but he did not at the time intend to keep and perform that agreement.

We do not think it proper to enter into a discussion of the weight of the testimony in this case, but we have, upon a careful examination of the record, made a statement of the facts which we believe are supported by evidence, and, as a matter of law, called for the submission to the jury of the issues of fraud on the part of Morrison. Our conclusion that the jury might find fraud on the part of Morrison is based alone upon the facts and circumstances which tend to establish the fraud, disregarding all facts and circumstances which explain his conduct or contradict the evidence upon which the fraud is predicated.

It is true, as suggested by counsel for appellant, that such facts as are

alleged and proven in this case concerning the transaction between Morrison and his wife, might create a trust in Morrison in favor of the children of Mrs. Morrison, her grandchildren and Sam. Morrison, Jr.; but granting that such a trust would arise upon the facts of the case, and that the circumstances might have enforced the trust instead of annulling the will, that does not deprive them of the right to choose the remedy which is most conducive to their interest. If Morrison procured the instrument by fraud, then it would be binding upon him in favor of the beneficiaries if they wish to enforce it; but that does not confer upon him the right to choose for them their remedy. The contestants had the right, if they could establish the fraud, to set aside the will and take the benefit of the provisions of the law as to the descent of the property.