ROUNDS v. COLEMAN. (No. 1060.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 22, 1916.)

1. WILLS ⊙⇒302(2) — CONTEST — EVIDENCE— HANDWRITING.

Evidence, in a will contest, held to show that the will propounded for probate was in the handwriting of the testatrix.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 701; Dec. Dig. ⊙⇒302(2).]

2. EVIDENCE ⊙⇒271(10) — WILL CONTEST — DECLARATION—HANDWRITING.

In a will contest the contestant's declaration to proponent, when she first saw the will, that it did not look like her mother's handwriting, and that she did not know her mother could write like that, was not evidence that it was not her handwriting, as contestant could not prove that fact by self-serving declarations at some other time or place.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1082; Dec. Dig. ⊙⇒271(10).]

3. WILLS ⊙⇒163(2) — UNDUE INFLUENCE— PRESUMPTION AND BURDEN OF PROOF.

Where an antecedent fiduciary relation existed between the testator and the beneficiary, a court of equity will presume confidence placed and influence exerted, but otherwise such relation and influence must be proved by the contestant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 390–394; Dec. Dig. ⊙⇒163(2).]

4. WILLS ⊙⇒163(2)—UNDUE INFLUENCE—PRESUMPTION—FIDUCIARY RELATIONS.

Though testatrix lived with her granddaughter and her husband, and the husband acted as her agent in looking out for land upon which she had filed and in paying the interest due the state and in depositing money in a bank to her credit, and was to use the grass and feed on the land for a specified consideration, there was no such fiduciary relation as would raise the presumption that there was undue influence exerted by the granddaughter, the sole beneficiary under the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 390–394; Dec. Dig. ⊙⇒163(2).]

5. WILLS ⊙⇒163(1)—CONTEST—BURDEN OF PROOF.

On the contest of a will on the ground of undue influence, where there was no such

fiduciary relation as to raise the presumption of undue influence by a granddaughter, the sole beneficiary, the burden of establishing undue influence was on the contestant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388, 389, 399, 400; Dec. Dig. ☞ 163(1).]

6. WILLS ☞55(1)—TESTAMENTARY CAPACITY —SUFFICIENCY OF EVIDENCE.
Evidence of testamentary capacity *held* sufficient to discharge the proponent's burden of formal proof, under Rev. Civ. St. art. 3271.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–140, 148–150, 161; Dec. Dig. ☞ 55(1).]

7. WILLS ☞47 — UNDUE INFLUENCE — EVIDENCE.
On the issue of undue influence, the physical and mental weakness of the testatrix, her age, etc., might be considered in determining whether her will was of sufficient strength to make the instrument her act and deed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 94; Dec. Dig. ☞47.]

8. WILLS ☞386—CONTEST—APPEAL—QUESTION OF FACT.
On appeal from a directed verdict for the contestee and proponent, the court is not to determine whether a verdict for contestant should be permitted to stand, but whether the evidence was sufficient to require a submission of the issue of undue influence to the jury.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 859; Dec. Dig. ☞386.]

9. WILLS ☞324(3) — CONTEST — UNDUE INFLUENCE—QUESTION FOR JURY.
The question of undue influence exerted by proponent *held* for the jury.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 769; Dec. Dig. ☞324(3).]

10. WILLS ☞155(3) — UNDUE INFLUENCE — PERSUASION.
Persuasion, entreaty, and the like are not alone sufficient to set aside a will on the ground of undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 377, 378; Dec. Dig. ☞155(3).]

11. WILLS ☞158—UNDUE INFLUENCE—TIME.
Undue influence must be exerted at the time of making the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 385, 386; Dec. Dig. ☞158.]

12. WILLS ☞164(1) — CONTEST — UNDUE INFLUENCE—EVIDENCE.
The financial condition of the beneficiary, especially where the facts show that the testatrix knew, *or should have known, thereof, in a* case dependent upon circumstances to establish the beneficiary's undue influence, is admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 403, 407, 408, 413; Dec. Dig. ☞ 164(1).]

Error from District Court, Collingsworth County; J. A. Nabers, Judge.

Will contest by Adelia T. Rounds against S. L. Coleman, proponent of the will of Equilla Wood, deceased. Judgment for contestee, and contestant brings error. Reversed and remanded.

J. M. Worten, of Pawhuska, Okl., R. H. Templeton, of Wellington, and J. Marvin Jones, of Amarillo, for appellant. R. H. Cocke, Jr., of Wellington, and J. L. Lackey, of Claude, for appellee.

HUFF, C. J. The proponent, Mrs. S. L. Coleman, offered and had probated the following will, as the last will and testament of Equilla Wood:

"I, Equilla Wood, do hereby make my last will that Sarah Leon Coleman and her heirs in body shall own all I possess at my death, consisting of land and house and house furniture, except one ($100) dollars in money to be paid to Adelia Temeta Rounds. I also give the said Sarah Leon Coleman power to collect all debts that is owing me and pay all that is against me at my death.

"This the 14 day of January, 1912.
                    "Equilla Woods.
"Witness:
   "C. C. Ralls.
   "Z. R. Ralls."

Adelia T. Rounds contested the will on the following grounds: (1) That she was entitled to the entire estate of Equilla Woods as the only living daughter of Mrs. Woods; (2) that the writing was not the will of Mrs. Woods; (3) that the will, if anything, is the will of S. L. Coleman, the beneficiary thereof, and her husband, J. S. Coleman, written by reason of their undue influence, exerted upon Mrs. Woods, who was a very old woman, about 80 years of age, feeble in both mind and body at the time the instrument was written; (4) that deceased, at the time of the execution of the will, was residing with S. L. Coleman and her husband, J. S. Coleman, and was mentally incapacitated to devise her property or execute the instrument.

The will was admitted to probate in the county court, from which judgment appeal was prosecuted to the district court of Collingsworth county, where, upon trial to a jury, the trial court, upon motion of the defendant in error, instructed a verdict for her. The grounds of the motion, requesting such instructions, are: Because (a) all the evidence conclusively shows the will to be the last will and testament of Equilla Woods; (b) that the contestant has failed to show any undue influence exercised by any person whatever upon the mind of Mrs. Woods, or that she was in any way or manner induced to make the will by contestee or J. S. Coleman, or any person, directly or indirectly; (c) that the burden of proof was on the contestant to show that Mrs. Woods was unduly influenced to make the will she did make, and that such influence operated upon the mind of the testatrix at the time of making the same.

The assignments present that the evidence is sufficient to raise the issue of undue influence, fraud, and incapacity of the testatrix, and therefore it was error to take the case from the jury. Mrs. Woods was the mother of plaintiff in error, Mrs. Rounds, and Mrs. Rounds is the mother of Mrs. Coleman. Mrs. Woods, therefore, by will, gave property to her granddaughter. It appeared to be an uncontroverted fact that Mrs. Woods, at the time of her death had been a

widow for more than 40 years; that she lived some 22 years with her daughter, Mrs. Rounds, making her daughter's home her home; that she at that time had no property, except, perhaps, some little household effects. Mrs. Rounds was married twice, and while living with her first husband she and he were in moderate circumstances and fairly good livers. About three years after the death of her first husband she remarried. This marriage was an unhappy one, and she was thereafter divorced from her second husband. In the meantime defendant in error and J. S. Coleman married and moved to Collingsworth county, where they filed on school land and acquired other property. Some 20 years or more previous to Mrs. Woods' death she went to live with Mrs. Coleman. Plaintiff testifies that when Mrs. Woods left her home, it was only to make a visit to her daughter, taking with her only a change of clothing, leaving her bed and the like with the plaintiff. Mrs. Woods never returned to plaintiff's home, but continued to reside with defendant until her death. At the time Mrs. Woods went to defendant's home she had no property of any kind except the household goods she left with her daughter. After going to Coleman's home she was induced by Coleman, so it may be inferred, to file on one section of land (the record does not give the date), and for the recited consideration of $500 she purchased another section (the date not given). There are two deeds in evidence, one dated April, 1910, and one September 10, 1906, by Mrs. Woods to Mrs. Coleman, to all of one section, except 80 acres out of the southwest corner, and the south half of the other section, for a recited consideration, in one of the deeds, of $500, and in the other $1,000. There are facts which will warrant the inference that Coleman used the grass on these sections and paid for its use by paying the interest due the state on the land for Mrs. Woods; that he generally attended to or looked after the upkeep of the property for her. However, it appears that tenants who rented the land did so from Mrs. Woods, and paid the rent to her, especially on the cotton crop, but the feed grown on the place was taken charge of by Coleman, but just how used is not shown. Mrs. Woods, it appears, during the time had a separate bank account, and checked on it; wrote letters with reference to it to the bank. It is also inferable that Coleman also made some of the deposits in her name, and remitted money to the state on interest for her. The evidence on these points may be said to be indefinite, but shows generally that Coleman had a general oversight in caring for the property. Mrs. Woods appears to have lived with the Colemans as one of the family, helping in the household duties. During these years a correspondence was kept up between Mrs. Woods and her daughter, Mrs. Rounds, who lived in Oklahoma. Mrs. Rounds visited her mother on several occasions, but in order to do so she obtained the money for expenses either from Mrs. Woods or the Colemans. The evidence will warrant the finding that up to 1910 or 1911, Mrs. Woods expressed repeatedly a purpose and desire to give the land in question to Mrs. Rounds, and some time in 1911 she requested Mr. Coleman to get a justice of the peace to draw her will. This Coleman did, and the justice of the peace drew her will, in which the testimony shows the property in question was bequeathed to Mrs. Rounds. The justice of the peace and J. S. Coleman witnessed it at her request. About a year after the will first above set out, Mr. Coleman, the husband of proponent, became insane and was placed in an asylum. There is some evidence that Mrs. Woods was worried over his condition and expressed a purpose to leave the property to Mrs. Coleman and her children. The evidence will warrant the finding that she was fond of both families. So matters stood when the last will was made, except the infirm condition of Coleman's mind is not made to appear at that time by the evidence. The will was written by Mrs. Woods in her own handwriting. At the time she wrote it she was about 82 years old, and there is some evidence that she was childish, forgetful, and subject to some kind of spells; Mrs. Ralls saying bilious colic. There may be some evidence that she would be unconscious for a time after one of these attacks.

The appellant contends the evidence shows that the last will was kept secret by Mrs. Coleman, and there may be some evidence authorizing the inference. There are some facts which tend to show that Mrs. Woods desired her daughter to move on the land while she was alive, but that Mr. Coleman in some measure opposed it; also that it had been discussed by Mrs. Coleman and others whether a will to Mr. Coleman would be good as against the plaintiff, and whether, if so made, plaintiff would contest it. There are a number of facts and circumstances which contestant urges as showing that the testatrix was feeble in mind and body and under the influence of Coleman and wife, and that in fact she never intended to give the granddaughter all her property to the exclusion of the daughter, but that she was unduly influenced thereto. We do not feel warranted in setting out all these circumstances or in discussing their probative force, or the lack of it.

[1, 2] In this connection we will state we do not think there is any evidence upon which a jury would have been warranted in finding that the will was not in the handwriting of Mrs. Woods. It bears date January 14, or 22, 1912. Either 22 is written over the 14 or 14 over the 22, as shown by the testimony in this record. It was evidently sought to be shown by plaintiff in the trial court that the two dates or the body are not

in the same handwriting. Every witness who testified on the case gave their opinion that they were the same, except, perhaps, one, but on his cross-examination he leaves his testimony in such shape it is entitled to no probative force. Every one who knew Mrs. Woods' handwriting on testifying said the will was in her handwriting. The two witnesses to the will testified that in their presence Mrs. Woods told them she signed it, or that she did sign it in their presence, and requested them to witness it; that she had gone into some other portion of the house, procured the will and brought it to the room where they were. These two witnesses were on a visit to Colemans, and were preparing to depart for their homes when the will was presented. Mrs. Ralls, one of the subscribing witnesses, was a half-sister of J. S. Coleman, and her husband was the other witness. The declaration of Mrs. Rounds to Mrs. Coleman, when she first saw the will, that it did not look like her mother's handwriting, and that she did not know that her mother could write like that, is not evidence in this case that it was not her writing. She could not establish that fact by proving her self-serving declaration at some other time or place. The evidence in this case is conclusive to our mind that Mrs. Woods wrote the will; in fact, there is no pleading of forgery, or that it was not in her handwriting.

[3] The first question we shall consider, and one suggested by the argument of appellant, is: Upon whom does the burden of proof rest under the facts of this case? It is urged that Coleman and his wife stood in a confidential relation with the testatrix, and that the wife was the principal beneficiary under the will, which is sufficient to cast the burden on Mrs. Coleman to show there was no undue influence. It has been held by the courts of this state, where the relation of attorney and client exists and during the existence of such relationship the attorney purchases, such purchase is deemed to be invalid, and that it is therefore incumbent upon the attorney to show affirmatively the absence of undue influence. Cooper v. Lee, 75 Tex. 114, 12 S. W. 483. This rule is applied with reference to other fiduciary relationships. Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Nabours v. McCord, 100 Tex. 456, 100 S. W. 1152; However, in Re Burns Estate, 21 Tex. Civ. App. 512, 52. S. W. 98, by the Court of Civil Appeals of the Fourth District, in which a writ of error was denied, it is held the burden of proving that undue influence operated upon the will in question lies on the party who alleges it. The beneficiary in that case was the attorney of the testator, and it is held, in the absence of other evidence, such relationship will not warrant the presumption of undue influence. While the case cited appears to announce the rule stated, and cites cases supporting the general rule that the burden is on the one asserting undue influence, a careful reading of the case, we believe, reveals that the court found sufficient evidence in the record which negatived undue influence, and that there was no evidence showing its exercise. Thereby the burden of proof in either event was met and discharged.

"Where there is no coercion amounting to duress, but a transaction is the result of a moral, social, or domestic force, exerted upon a party controlling the free action of his will, and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances, undue influence naturally has a field to work upon in the condition or circumstances of the person influenced, which render him peculiarly susceptible and yielding—his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like. All these circumstances, however, are incidental and not essential. Where an antecedent fiduciary relation exists, a court of equity will presume confidence placed and influence exerted. Where there is no such fiduciary relation the confidence and influence must be proved by satisfactory extrinsic evidence. The rules of equity and the remedies which it bestows are exactly the same in each of these two cases. The doctrine of equity concerning undue influence is very broad and is based upon principles of the highest morality. It reaches every case and grants relief where influence is acquired and abused, or where confidence is reposed and betrayed. It is specially active and searching in dealing with gifts but is applied when necessary to conveyances, contracts, executory and executive, and wills." 2 Pomeroy, Eq. Jurisprudence, § 951.

[4, 5] The Missouri court announces the rule that upon proof of antecedent fiduciary relations between the testator and the principal beneficiary under the will, "the law indulges the presumption that undue influence has been used." Mowry v. Norman, 204 Mo. 173, 103 S. W. 15; Ryan v. Rutledge, 187 S. W. 877. Under the facts of this case, and under early authorities of this state, we believe no such fiduciary relation existed between Mrs. Woods and Mrs. Coleman as will bring into operation the presumption that undue influence had been used. At most, there appears only an agency of John Coleman to look after the land, keep the place up, and assist in paying the interest due on the land due the state; to deposit money in the bank to the credit of Mrs. Woods, and perhaps a contract to use the grass and feed on the land, for a certain specified consideration. We do not think this will establish such fiduciary relation as will raise the presumption that there was undue influence, and that it was used by the beneficiary under the will. The testatrix was the grandmother of Mrs. Coleman, and the fact that she gave to her grandchild the land will not itself raise the presumption of undue influence. Their surroundings and the relationship do not present any such presumption, but are equally as suggestive that the act influenced was the effect of kindness and general conduct for good towards

189 S.W.—69

the grandmother, who for 20 years had made her home with her grandchild, and with whom and by the aid of whom and her husband she had been enabled to acquire the very land in question. Millican v. Millican, 24 Tex. 426 et seq; Saufley v. Jackson, 16 Tex. 584; Beville v. Jones, 74 Tex. 148, 11 S. W. 1128. The acts of the husband in caring for and attending to the outdoor duties concerning the land are not such as to establish the fiduciary relation which will "be thought a case of agency, of a character which awakens the jealous scrutiny of a court of equity into the dealings of the parties." Millican v. Millican, 24 Tex. 451. The evidence in this case indicates that Mrs. Woods got the rent from the tenants on the cotton which was paid to her by them, while the feed and grass was used and controlled by Coleman, evidently under an agreement with Mrs. Woods. The burden, therefore, we think, remained with the contestant to show undue influence, and that it was used in obtaining the will.

[6] The testimony in this case is sufficient as to Mrs. Woods' testamentary capacity at the time she made the will, in the absence of undue influence. The evidence shows she wrote it and called upon the witnesses to sign, as witnesses; and the defendant offered evidence that at that time, before and after that date, she was a bright, sprightly old lady. The testimony of Mrs. Rounds to the effect that she was feeble, childish, and forgetful, and by others that she had some sort of spells, and at one time was unconscious, does not show that she did not have sufficient understanding, at the time the will was made, to know the property bequeathed and to whom it was so given. The spells spoken of are shown to have been occasioned by some sort of indigestion or bilious colic. The evidence was sufficient to discharge the burden of formal proof by the proponent to probate the will under article 3271, R. C. S., Warren v. Ellis, 137 S. W. 1182; Beazley v. Denson, 40 Tex. 416; Prather v. McClelland, 26 S. W. 657.

[7] To show undue influence rested upon the contestant in this case; and, as part of the evidence on that question, the physical or mental weakness of the testatrix, her age, and the like, may be taken into consideration as to whether her will was of sufficient strength to make the instrument her act and deed, or whether it was the act of some one else, who may have dominated it so that it was not her free and voluntary act. Gallagher v. Neilson, 121 S. W. 564.

[8-11] Upon the facts offered in evidence, whether weak or inconclusive, under the rule in this state, we cannot hold as a question of law there was no evidence to be considered by the jury. Campbell v. Barrera, 32 S. W. 724; Trezevant v. Rains, 85 Tex. 329, 23 S. W. 890; Brown v. Pridgen, 56 Tex. 127. We are not to determine upon this appeal whether a verdict for contestant should be permitted to stand, but whether the evidence was sufficient to require a submission of the issues to the jury. It is not for us, at this time, to determine what the trial court should do in case of a verdict in favor of the contestant. Warren v. Ellis, 137 S. W. 1182.

We have examined the cases of Patterson v. Lamp, 21 Tex. Civ. App. 512, 52 S. W. 98, and Morrison v. Thomas, 99 Tex. 248, 89 S. W. 409, cited by appellee, together with many others, and without attempting to draw distinctions, we have reached the conclusion the issue should have gone to the jury. It has been said a will cannot be set aside on proof of facts, which at most do no more than show an opportunity to exercise undue influence which may have existed, or raise a bare suspicion that such influence may have been used. Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606; Barry v. Graciette, 71 S. W. 309. That a daughter did not receive as much as she thought she ought under the will does not raise a presumption of undue influence. Helsley v. Moss, 52 Tex. Civ. App. 57, 113 S. W. 599. Persuasion, entreaty, and the like alone are not sufficient. Patterson v. Lamp, 21 Tex. Civ. App. 512, 52 S. W. 98; Powell v. Powell, 170 S. W. 111. Undue influence must be exercised at the time of making the will (Holt v. Guerguin, 156 S. W. 581, and authorities supra); but all these things and others, if they point to undue influence, when taken together, may or may not be sufficient to establish that fact. The circumstances surrounding the testatrix at the time of making the will, her relation to the principal beneficiary, and all the conditions are to be looked into; all the facts and circumstances must be examined to ascertain whether her liberty of free agency has been destroyed, or the will of the testatrix substituted by another. Goodloe v. Goodloe, 47 Tex. Civ. App. 493, 105 S. W. 533. We quote from Holt v. Guerguin, 156 S. W. 581, the rule which controls this character of case:

"As said by the Supreme Court of Massachusetts, in Woodbury v. Woodbury, 141 Mass. 329, 5 N. E. 275, 55 Am. Rep. 479: 'It is often difficult to show by direct proof the undue influence, and direct evidence of the actual exercise of such influence can hardly be expected. Oftentimes the means of keeping the influence out of sight are many and easy of application, and yet the result may be clearly apparent. Delafield v. Parish, 25 N. Y. 9. The fact of the influence exerted is more often gathered from all the circumstances surrounding the donor, his health, age, and mental condition, how far he was dependent upon and subject to the control of the person benefited, the opportunity which he had to exercise his influence, and the disposition of the donor to be subject to it. In addition the fact of influence by the donee over the donor, having been established, it is not necessary to show by absolute evidence that this was exercised by the donee at the time the gift was made. Undue influence must be exercised in relation to the gift made, and not as to other transactions, in order to invalidate a gift thus obtained. But if the jury find from the evidence that, at or about the time when the gift was made, the alleged donor was, in other im-

portant particulars, so under the influence of the person receiving the gift that, as to them, he was not a free agent, but was acting under undue influence, the circumstances may be such as fairly to warrant the conclusion, from the absence of any evidence bearing directly upon acts done when the alleged gift was actually made, that in relation to that also the same undue influence was exerted.' "

While there is no direct evidence in this case to show that Mrs. Coleman exercised undue influence, yet the evidence and circumstances·are sufficient to call for the judgment of the jury.

[12] The seventh assignment of error is not properly briefed; but, as the case is to be reversed, it is proper to ́notice it. The financial condition of the beneficiary, especially where the facts are sufficient to show that the testatrix knew, or should have known, thereof, in a case dependent upon circumstances to establish undue influence, is admissible in evidence. Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441, 40 Cyc. 1034, note 20.

The case will be reversed and remanded, for the reasons above stated.