### EL PASO FOUNDRY & MACHINE CO. v. BENNETT.

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1911. Rehearing Denied December 6, 1911.)

1. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—DEFECTIVE MACHINE—ASSUMED RISK.

Where a servant was injured by a defect in the lathe he was directed to operate, the defense of assumed risk should be confined to the question whether or not he knew the danger, or could have known it by the use of ordinary circumspection, independent of whether he should have stopped the machine before undertaking to change the speed; such question being relevant only to the defense of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

In an action for injuries to a servant by the kick of a speed lever attached to a lathe, due to a defect in the gears, evidence *held* to require submission to the jury of the questions of assumed risk and plaintiff's contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1132; Dec. Dig. §§ 288, 289.*]

3. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—SERVANT'S DUTY.

Where a servant was directed to do certain work on a machine, the defectiveness of which he had no knowledge, he was not required, as a matter of law, to make an inspection to ascertain whether the machine was in working order, but was only bound to exercise ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

Appeal from District Court, El Paso County; James R. Harper, Judge.

Action by Sam Bennett against the El Paso Foundry & Machine Company. Judg-

ment for plaintiff, and defendant appeals. Affirmed.

C. W. Croom and J. L. Dyer, for appellant. Patterson & Wallace, for appellee.

PETICOLAS, C. J. In this case the appellee had judgment in the court below against the appellant, in a suit for damages for personal injury. Practically the only question raised in the case by the appellant is whether the appellee assumed the risk as a matter of law, and whether the trial court erred in submitting to the jury the question of assumed risk.

The appellee at the time of the injury was working on a machine called a "Patent Head Lathe." He had been put to work upon this machine by the appellant, although it was not his regular job. It is somewhat difficult to describe the machine without the aid of a photograph, which we have in the record, but which it is impracticable to transfer to the opinion. In so far, however, as it may be done, it appears that the lathe was operated by a belt revolving upon a wheel or pulley above the lathe, and upon a wheel in the lathe. Those wheels were at right angles to the longitudinal direction of the lathe, so that, as the workman stood facing the lathe, the wheel in the lathe upon which said belt ran revolved exactly towards him, or exactly from him. Immediately above the longitudinal center of the lathe, and connected with certain cones, cogs, and gears, about 12 feet above the lathe, was a lever, or handle, which was used to change the speed of the machine. It operated with the longitudinal direction of the machine; that is to say, it hung immediately above the machine, and its lower end was nearer the left-hand end of the lathe, as the workman faced the machine, when it was upon the high speed. To change to a lower speed, this lever moved with the longitudinal direction of the machine, between the sides of the belt which operated the machine, to a point nearer the right-hand end of the machine as one faced it. Or, to state it again for clearness, as one faced the machine, immediately in front of him and at right angles to the length of the machine was the lower wheel, or pulley, and the belt from it to the upper wheel, which was about 12 feet above him, and attached about 12 feet above him, and to the right of the belt and pulleys, was the upper end of the said lever. When the machine was running on high speed, the lower end was brought through the belt, nearly to the left-hand end of the machine. To change to a lower speed, the machine was designed so that a push upon the lower end of this lever would carry it through between the belts and to a point upon the right-hand side of the belts, and this movement shifted certain cones and gear wheels about 12 feet above, and thus reduced the speed in the machine. There was also another lever to the right of this one, which might be used to stop the machine.

On the day of the injury, appellee had occasion to change the machine from high speed to low speed. The change speed lever was in position, as described, at nearly the left-hand end of the lathe, and tied to it at its lower end was a rawhide string, which was fastened at the left-hand end of the lathe, for the purpose of holding the lever in position. Appellee had never before that time had occasion to use the change speed lever. He untied the rawhide string where it was attached to the lathe, folded it up in his left hand, passed it through the belt which ran over the wheels described, and reached for it with his right hand. There is some conflict in the evidence as to whether he had succeeded in getting it attached to his right hand or not, but we do not deem this question material. At this moment, however, the change speed lever suddenly moved from the extreme left-hand end of the lathe towards the right-hand end, striking appellee's hands. In some way, not made clear by the evidence, this resulted in appellee's hand and arm being drawn down between the wheel and belt, and almost the entire arm crushed and mangled.

The testimony showed that the lathe and its machinery were defective, in this: In that the cones above the machine, which changed the speed, had become worn, so that the change speed lever would at times move suddenly from the one position to the other, and this defective condition was directly attributable to and caused by the negligence of the appellant.

It appears that the appellee had worked on this machine a year or more before this time for a short period, and at that time there was no rawhide string; that he had worked on it a few hours some days before the time of the accident, and that at that time the lever was attached to the left-hand end of the lathe, as described, by said rawhide string; that at the time he was injured he had been working on the machine for about 18 hours. He testified, and we find, that he had never had occasion to move the change speed lever at any time since the rawhide string had been attached to it. He also testified that he was at the time filing some work upon the lathe, and it was running at too great a rate of speed, and he undertook to change the rate of speed for that reason.

It is very strenuously contended by the appellant that the appellee, seeing the rawhide string, was thereby apprised of the risk of operating the machine, as a matter of law. It is also contended that, inasmuch as the machine could have been stopped before changing the speed, and, inasmuch as appellee did not do so, but undertook to change the speed while the machine was in motion, he took the most hazardous of two methods, and thereby assumed the risk, as a matter of law.

[1] To our minds, this case presents a very

difficult question, not of what is the law, for that seems to be fairly well settled, but of the application of that law to the facts; and especially does it become difficult when we undertake, as suggested by appellant we should do, to distinguish between assumed risk and contributory negligence, as applicable to the facts in this case. We incline to the opinion in this case that the defense of assumed risk should be confined to the question whether or not Bennett knew the danger, or could have known it by the use of ordinary circumspection; and that the contention, made by appellant, that Bennett should have stopped the machine before he undertook to change the speed is one of contributory negligence.

[2] The testimony showed that the change speed gears were put in the machine for that very purpose, i. e., that the speed might be changed without stopping the machine. It also showed that it was customary to so change it; that no other method of changing was used, except to change the speed while the machine was in motion by the use of the lever described. But, without attempting to decide specifically that there is no element of assumed risk which enters into Bennett's change of the speed without stopping the machine, we are clearly of the opinion that that particular question, whether it is assumed risk or contributory negligence, is a question of fact for the jury, and was properly submitted as such.

It remains to be seen whether Bennett, as a matter of law, assumed the risk. The testimony showed: That at the time he worked on the machine two years before there was no rawhide string. That at the time he was injured he had worked about 18 hours. That he had never had occasion to change the lever since the string was on it; and he says: "I did not know of any defect in the shafting appliances or cones of that machine. I did not know that lever 'B' would fly off when I untied that string. I never had no occasion to untie that string before. I was put on for a few hours as a man quit, and it was a short job, so the foreman told me to go ahead and get it out. I did not know when I untied this string that the lever would kick out. I had no occasion to believe it would kick. I did not know of any defect in the cone. I had not been instructed by any one with reference to operating that machine or holding that handle." The foreman, Williams, testified: "I would not consider it hazardous for a prudent, experienced machinist, with regard for his own safety, to go ahead without asking any questions about it, he seeing the string, as I have run the machine myself in the same condition. I never thought of an accident of that kind happening by reason of that, and never would have thought so, and no one would have thought so. I would not consider that as one of the natural and probable consequences by use of that string on the clutch. Or-

dinarily, that cone being worn, the lever flying out and striking you would not be one of the natural and probable consequences thereof, *because you are not standing in line with it.*" Another witness for appellee testified: "A man standing on the ground could not, by looking up, discover the defects or defective condition of these cones."

On cross-examination, Bennett testified: "The string had been there so long I never gave it a thought. The string was not necessary, and was not there when I worked there two years before. I knew the string was tied on there. I realized that if that string in passing through the belts came in contact with belt and pulley it would be dangerous. If I had stopped to think about the lever being tied, I suppose my knowledge and observation would have told me it was dangerous. Any one with ordinary judgment and discretion would know it was dangerous *if he stopped to look into it. I realize now* it was dangerous, and by the exercise of ordinary circumspection I could have ascertained the defect, but I never stopped to think about it, whether it was dangerous or not, and did not ask any questions, nor make any investigation."

[3] The statements of the plaintiff himself, on cross-examination, make, to our minds, the main difficulty in the case. Being an experienced machinist, when he went to work on the machine and found the rawhide string tied on it, he must necessarily, we think, have known that the machine was defective. But does it follow that he must necessarily have known that the defect was dangerous, or that the use of ordinary circumspection would have shown him that it was dangerous? It must be borne in mind, as we think, that the danger was the kick of the lever. It must also be borne in mind that Bennett, under the law, was not required to make an inspection. Perhaps the strongest statement of what his duties were, in so far as assumed risk is concerned, is found in the case of Railway v. Hynson, 101 Tex. 546, 109 S. W. 930, in which the Supreme Court says that: "The servant assumes the risk of a danger of which he has acquired knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment."

In Railway v. Hannig, 91 Tex. 351, 43 S. W. 510, Judge Gaines stated the law to be that: "The servant has the right to rely upon the assumption that the machinery with which he is called upon to work is reasonably safe. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risk arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risk, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge."

Under the law, then, to assume the risk, Bennett must either have known the danger, or the danger must have been such as, by the exercise of ordinary circumspection, but not amounting to an inspection, he should have discovered the danger.

As said before, we think it a fair assumption that Bennett knew there was a defect; if we assume that in the exercise of ordinary circumspection he would have learned that the lever would kick out, does it follow that he would have learned that this motion of the lever might be dangerous? The lever moved in a line with the length of the machine, and not towards the workman. Would a man of ordinary circumspection have seen that there was danger from the movement of this lever?

We are not unmindful of the strength of appellant's contention, and we do not overlook the things that Bennett himself stated on cross-examination, yet it will be remembered that defendant's foreman testified that he did not think the kick of the lever dangerous.

It is apparent that the question reduces itself to whether a man of ordinary circumspection would have stopped to look into it, and would have concluded from looking into it, not from inspection of it, that the defect was a dangerous one. We can see, also, that when Bennett testifies that he did not know the defect, and that the lever would kick out, that it may be that ordinary circumspection (without inspection) would not have told him that there was danger, and it seems to us that it is exactly in these cases, where the minds of ordinary men can differ, that it is proper to submit the matter to the jury.

In Drake v. Railway, 99 Tex. 246, 89 S. W. 409, Mr. Justice Williams said: "Whether or not the condition of a tool be so obvious that a servant necessarily assumes the risk of using it, must depend, in some cases, not merely upon the simple character of the instrument itself and the openness of the defects in it, but also upon the situation and the condition of the servant himself, his opportunity and capacity for discovering that condition, and the circumstances calculated to withdraw his attention from it; and the test in doubtful cases is the judgment of a jury upon the question whether or not persons of ordinary prudence, similarly situated, would have discovered the risk." To our minds, this case presents exactly that status of affairs. Whether or not a person of ordinary circumspection, without inspection, would have realized that there was danger from the lever suddenly moving, not towards the operator, but in a line at right angles in front of him, is a doubtful question on which ordinary minds could differ, and one upon which it was proper to take the verdict of a jury.

We think the whole circumstances should be taken into consideration; that the appellant had in its possession and in daily use a piece of machinery, which it negligently allowed to remain defective, and, as it now contends, dangerous; that plaintiff was not the regular operator of this machine; that he was ordered to use it for the particular job; that, although the string was on the machine, others had used it, as did plaintiff; that plaintiff was not required to inspect the machine; that he gave the matter no thought, and we are unable to conclude, as a matter of law, that plaintiff did assume the risk; but we believe the issues of assumed risk and contributory negligence should have been, as was done, submitted to the jury.

The case is therefore affirmed.