HANNAH ELLIS AND ANOTHER v. SIMON MATHEWS AND WIFE.

Although a contract made by a man of sound mind and fair understanding, may not be set aside, merely from its being a rash, improvident, or hard bargain; yet if the same contract be made with a person of weak understanding, there does arise a natural inference that it was obtained by fraud, or circumvention, or undue influence.

Where a witness had testified to a conversation between the parties to a deed of gift, at the time of its execution, in which to induce the donor, the mother of the donee and seventy-five or eighty years of age, to sign the deed, the husband of the donee, the latter being present, told the donor that the property, which was slaves, should not be taken out of her control during her life ; and the Court instructed the jury to disregard the testimony, because the donor, who was sued to recover the slaves by the donee, had not alleged in her pleadings that a life estate in the slaves had been retained by her; it was held that the charge was calculated to mislead and probably did mislead the jury, and cause them to disregard said testimony in their consideration of the defence of fraud and imposition, which had been pleaded.

Where the defendant, having been sued for certain slaves by her donee, pleaded that the deed of gift was obtained from her by false and fraudulent inducements of said plaintiffs, and by their fraudulent taking advantage of her old age and mental and bodily infirmities, and without any consideration whatsoever ; and the Court charged the jury that the only question for their consideration was, whether the donor, at the time of making the deed of gift,

was of sound mind and capable of making a binding contract, and if not, did she by her subsequent acts and conduct ratify and confirm it; the jury having found for the plaintiff; it was held that the instruction was calculated to mislead, and probably did mislead the jury, although it was evident from other portions of the charge, that the Court did not intend wholly to exclude from the consideration of the jury, the question of fraud.

Appeal from Houston. Tried below before the Hon. John H. Reagan.

Suit by appellees, Simon Mathews and his wife, Hannah Caroline Mathews, formerly Ellis, against the appellants, Hannah Ellis, the mother of said Hannah Caroline, and John J. Ellis, the brother of said Hannah Caroline, to recover a family of negroes, which they alleged the said defendants wrongfully detained. Plaintiffs filed as part of their petition, and as the title under which they claimed, a deed of gift from the said Hannah to the said Hannah Caroline, of said slaves, dated August 24th, 1847, witnessed by John Box, Jesse T. Prewitt and A. J. Corley ; proved by Corley on the 20th of September, of same year, and recorded same day.

John J. Ellis filed a general denial, and other pleas, which are not now important. Defendant Hannah answered to the effect, that the deed of gift was obtained from her by the false and fraudulent inducements of said plaintiffs, and by their fraudulent taking advantage of her old age and mental and bodily infirmities, and without any consideration whatsoever; and further, that said negroes had never been out of her possession and control.

Plaintiffs gave in evidence the deed of gift, and proved that the slaves were on the farm of John J. Ellis, one of the defendants, where defendant Hannah lived in a house by herself; and the slaves were seen sometimes at the house of defendant Hannah, and sometimes at that of defendant John J., and sometimes working in the fields of the latter.

Defendants called several witnesses ; the testimony of all of them tended to the same conclusion with varying force; and the

following, which is the testimony of John Box, one of the subscribing witnesses to the deed of gift, will suffice for this report :

I am a subscribing witness to the deed of gift. There was no person present at the signing but Mathews and wife, and Prewitt and wife, the old lady and myself. I was sent for by the parties ; when I got there the deed was handed to me ; the old lady asked me to read it to her ; I did so, and she asked my opinion about it ; I undertook to explain it to her, and when I told her it took the negroes immediately out of her control, she said she would not sign any instrument that would give the control of her negroes to any person during her life time. Mathews then told the old lady, his wife being present, that they did not intend to take the negroes out of her control or possession, and upon his making that statement the old lady consented to sign the deed. The deed was written when witness got there. The old lady was in feeble health ; she was distracted and confused in mind ; she was not competent to transact business. Witness had known her several years ; never saw her as bad off as at that time ; they were sitting up with her at nights. When sent for, witness supposed it was to see the last of the old lady. It was the Sabbath day. Witness staid there several hours that day ; the paper was handed witness soon after he got there ; whilst talking about the matter, the negro woman Fanny came to the door and said John J. Ellis was coming ; the old lady took the paper and put it under her head, or some where about the bed, which witness said accounted for its defaced appearance. John J. Ellis left before witness ; do not recollect whether the paper was signed before John J. came in or not ; if not, it was not signed until after he left ; the old lady was then some seventy-five or eighty years of age. Witness saw Mathews sometime after that, and he asked witness to go and prove said deed of gift for probate. Witness told him he would not do so, for he thought they were taking the advantage of the old lady, and

he (witness) would have nothing more to do with the matter.

Cross-examined: Witness saw the old lady occasionally for some one or two years after that. She appeared to be in as good health as could be expected of a person as old as she then was. She attended to the duties of midwifery before that time, but not since then, as far as known to witness. She moved away after that time, and he did not see her as formerly.

Other witnesses proved that she continued to act as a midwife, riding behind some one when she was sent for, and that she was preferred to the present time. Some witnesses, speaking of her when not in what were called her spells, thought her health and mind were as good as usual in persons of her age.

It appeared by bill of exceptions, that plaintiffs excepted to the admission of so much of Box's testimony as related to Mathews' promise that the slaves should not be taken out of the possession of defendant Hannah; and that the Court admitted it, remarking that it might go to the jury on the question of fraud.

As rebutting testimony, plaintiff read the deposition of A. J. Corley, one of the subscribing witnesses, to the effect that he subscribed his name as a witness to the deed of gift, at the request of defendant Hannah, sometime after its execution, and proved it for record, John Box, one of the witnesses, refusing to be qualified in reference thereto; that the old lady was in very feeble health, but appeared to witness to understand distinctly what she was doing at the time she requested witness to sign the deed. The facts which induced witness to think that her mind was as sound as any person's of her age (for she appeared to witness to be very old) were : 1st. She spoke of her intention of conveying property spoken of in the deed to her daughter, the wife of Simon Mathews. 2nd. She spoke of her hard treatment by her other children, and of their continuous efforts to induce her to change her mind in reference to the disposition of her property.

The evidence as to the possession of the slaves was that the old lady lived sometimes with one of her children and sometimes with another, but always, so far as the evidence showed, in a house by herself, and that she always took the slaves with her and kept the control of them, they being all the property she had. During most of the time since the deed was made, she had thus lived at Mathews' place, and been supported by him. A short time before the suit they had a dispute about the property, the exact nature of which did not appear, unless it was because the old lady wanted to give one of the slaves to her son, the defendant John J.; and she went off that night with the slaves, to the place of the defendant John J., declaring that Mathews was going to run the slaves off, and that she was in fear for her life. It is scarcely necessary to say there did not appear to be any ground for her suspicions.

The Court charged the jury as follows :

The deed of gift which is in evidence before you, from Mrs. Ellis to Mrs. Mathews, standing unimpeached as to its execution, vests the right of these negroes in the plaintiffs, Mathews and his wife, and entitles them to a verdict at your hands, unless the defendants have shown such causes as avoid the force and effect of this deed of gift. The defendant Hannah Ellis sets up as her defence that by the fraud of the plaintiffs she was deceived and overreached, and induced to execute the deed of gift at a time when, on account of disease, old age and infirmities, her mind was so far impaired and unsound, that she was incapable of making a valid contract. Some of the witnesses have spoken of conversation between the parties to the deed of gift tending to show that Mrs. Ellis made a verbal reservation of a life estate to herself in the negroes ; this you will wholly exclude from your consideration, as no such claim is set up by Mrs. Ellis in her answer. And the only question for your consideration is this : was Mrs Ellis, at the time of the making of this deed of gift, of sound mind,

Ellis v. Mathews.

and capable of making a binding contract ; and if not, did she by her subsequent acts and conduct ratify and confirm this deed of gift to her daughter. If you conclude that the execution of this deed of gift was her free and voluntary act, that she was of sound mind when she executed it, capable of making a contract, and uninfluenced by any fraud or deceit by the plaintiffs, then you should find for the plaintiffs. Or if you believe Mrs. Ellis was laboring under such mental imbecility at the time of the execution of the deed of gift as to render her incapable of making a valid contract ; or if, at the time of its execution she was overreached by the deceit or fraud of the plaintiffs, and that subsequently, when she was of sound mind, and when she was not acting under the influence of fraud or deceit, she freely and fully by her acts recognized the right of the plaintiffs under that deed, then you should find for the plaintiffs. And to determine this, you should consider the subsequent condition of the mind of Mrs. Ellis, as well as at the time of the execution of the deed of gift, the statement of the witness Box, that at the time of its execution he explained to her the force and character of the deed ; the statement of witness Corley as to her reasons for its execution ; the statement of witness Hargraves that she wished him to take the negroes to Mathews, as she intended Mrs. Mathews to have the negroes. But if you believe that her mind was so infirm and unsound at the time of the execution of the deed of gift, as to disqualify her from understanding what she was doing, or that the plaintiffs overreached her by fraud and deceit, and that she did not afterwards by her acts or otherwise, ratify the deed of gift, then you should find for the defendants.

The defendants excepted to the charge given, in general terms ; but did not ask any additional charge.

Verdict and judgment for plaintiffs. Motion for a new trial overruled, &c.

*Yoakum & Taylor*, for appellant. I. As to the condition

of Mrs. Ellis' mind, in application of the proof, see 1 Greenleaf on Ev. part 3, Chap. 3, p. 595.

II. There never was any delivery of the property by Mrs. Ellis, and in relation thereto, see 1 Tex. R. 170 ; Jacobs' Law Dic., Art. GIFT ; and 12 Johns. R. 188.

III. The whole tenor of the evidence makes a case of glaring fraud on the part of the plaintiffs below. 1 Story's Eq. Sec. 234 to 238, is exactly applicable to such case. Also, 2 Kent Com. Marg. p. 451.

*R. A. Reeves*, for appellees. I. The deed of gift was evidence of title in the plaintiffs, unless the defendants had shown some cause to avoid its force and effect. (Wilburn v. Cochran, 9 Tex, R. 123 ; 13 Tex. R. 143.)

II. There was no error in charging the jury to exclude the evidence conducing to prove that a life estate was reserved by Mrs. Ellis. No such issue was raised by the pleadings, (Thompson v. Thompson, 12 Tex. R. 329 ; Id. 318.) The Court, however, in a subsequent part of the charge, instructed the jury to consider this evidence on the question of fraud, and the testimony of the witness Box as to what occurred at the time the deed was signed. This evidence ought not to have been received for any purpose; 1st. Because the condition or reservation, being in parol, was inconsistent with the written deed and void ; 2nd. It contradicts the written deed ; 3d. It is not alleged in the answer. (12 Tex. R. 49.)

The fraud alleged in the pleadings goes to the execution of the deed, and the want of capacity in the grantor, from old age and weakness of mind, to bind herself by contract. The condition or reservation of a life estate, spoken of by the witness, whether expressed in the deed or omitted, would not be fraud ; for in either case it would be according to the intention of the donor, and if relied on by defendants to defeat the suit, it ought to have been specially pleaded, as it could not be given in evidence under the general issue. (2 Tex. R. 208.)

Ellis v. Mathews.

If the jury believed from the evidence that Mrs. Ellis had been deceived by the fraud of the plaintiffs, they would have found for the defendants. They found for the plaintiffs, and if there was any conflict in the evidence, it was their province to reconcile it.

WHEELER, J. If the plaintiffs induced old Mrs. Ellis to sign the deed of gift by declaring that they did not intend to take the slaves out of her possession during her life, thus caus-ing her to believe that she was not to be deprived of their ser-vice, and they intended the contrary, can it be doubted that it was a deceit? If it was upon the faith of this representation, that she executed the deed, and but for this she would not have signed it, must it not be an act of bad faith afterwards to vio-late the promise, or falsify the representation by dispossessing her? It cannot be said that she ought not to have trusted to the representation. She had a right to repose unreserved confidence in those standing in so near a relation. Besides, she was old and infirm, and feeble in body and mind. And although the law does not undertake to determine the validity of the acts and contracts of men by the greater or less strength of their understanding, and mere weakness of mind does not incapacitate a party, if he be not *non compos mentis*, yet weak-ness of understanding may be a material circumstance in es-tablishing an inference of unfair practice or imposition. It gives additional force to circumstances leading to the infer-ence that a deed has been obtained by fraud, or imposition, or undue influence ; for, says Judge Story, " although a contract, made by a man of sound mind and fair understanding, may not be set aside, merely from its being a rash, improvident or hard bargain; yet if the same contract be made with a person of weak understanding, there does arise a natural inference that it was obtained by fraud, or circumvention, or undue in-fluence." (Story's Eq. Sec. 239.) And it is immaterial from what cause such weakness arise s, whether it be from tempo-

HARVARD LAW SCHOOL LIBRARY.

rary illness, constitutional despondency, general mental imbecility, or the natural incapacity of early infancy, or the infirmity of extreme old age. (Id. 234, 236 ; 2 Kent, Com. 451.)

When a person circumstanced as the donor in this case was, makes a deed, or does an act by which she deprives herself all her property, and even of a servant to wait upon her, and renders herself wholly dependant on others for support and every comfort, it can but be regarded as improvident ; and when to that is added mental weakness and imbecility, it naturally awakens attention and scrutiny into the means which have caused the act, and gives force to every unfavorable appearance in the case ; and if there is evidence that any misrepresentation or imposition has been practised upon a mind so enfeebled, it would certainly warrant the setting aside the deed on the ground of fraud, arising from imposition and undue confidence or influence. The evidence upon this point was certainly entitled to its weight with the jury in deciding upon the issue of fraud. But they were instructed by the Court wholly to disregard what the witness had said of " a conversation between the parties to the deed of gift, tending to show that Mrs. Ellis made a verbal reservation of a life estate to herself in the negroes," as no such claim was set up by Mrs. Ellis in her answer. The evidence was not intended to establish the creation of a life estate by parol, but to show that Mrs. Ellis had made the deed under the belief and expectation that she would not be deprived of the use of the property during her life, induced by the declarations and promise of the donees ; and thus to sustain the defence that it was obtained by deceit and imposition ; and in this view the evidence was proper to be taken into consideration by the jury, and given the full weight to which, in their opinion, it was entitled ; and it was error to exclude it.

Again, the Court instructed the jury that the only question for their consideration was this : " was Mrs. Ellis, at the time of making this deed of gift, of sound mind, and capable of mak-

Ellis v. Mathews.

ing a binding contract; and if not, did she, by her subsequent acts and conduct, ratify and confirm this deed of gift to her daughter? This was virtually withdrawing from the jury the consideration of the question of imposition or fraud, and confining them to the single question of her capacity to contract, or her ratification subsequently of her act. This certainly was error. It is evident, from other portions of the charge, that the Court did not intend wholly to exclude from the consideration of the jury the question of fraud. But such was the manifest effect of this portion of the charge; and its tendency as a whole was to divert their minds from that inquiry, and make the case turn mainly on the question of mental incapacity, or the subsequent conduct of the donor, supposed to amount to a ratification of the deed. These were legitimate subjects of inquiry; but they were not the sole, or the principal questions for the consideration of the jury. If the effect of this part of the charge had been completely corrected by other instructions, clearly and distinctly submitting to the jury the question of imposition and fraud, this error might have been obviated. But this was not the case. Nor was there anything in the charge which was calculated to have the effect of correcting the error of having withdrawn from the consideration of the jury the representations made to Mrs. Ellis at the time of executing the deed, to the effect that she should have the use of the property during her life. For these reasons we are of opinion that the charge of the Court was erroneous, and calculated to mislead. The judgment is therefore reversed, and the cause remanded.

Reversed and remanded.