### JOHNSON'S ESTATE v. POINDEXTER et al. (No. 195.) *

(Court of Civil Appeals of Texas. Eastland. Oct. 15, 1926. Rehearing Denied Dec. 2, 1926.)

1. Wills ⊕⊐400—Court can consider only testimony favorable to verdict finding lack of testamentary capacity and undue influence, in determining sufficiency of evidence.

In considering sufficiency of testimony to support verdict finding lack of testamentary capacity and undue influence, court can consider only testimony favorable thereto.

2. Wills ⊕⊐166(2)—Finding of exercise of undue influence by son over testatrix held sustained by evidence.

Evidence *held* to sustain finding of jury of exercise of undue influence over testatrix by proponent her son.

3. Wills ⊕⊐156—Where undue influence was practiced, will cannot be probated.

Will cannot be probated where undue influence was practiced on testatrix, though she was of sound mind.

4. Witnesses ⊕⊐344(1)—Proponent charged with undue influence was improperly required to testify that he stated that he was manager of testatrix's ranch in order to be released from army service.

Requiring proponent of will charged with undue influence to testify that he stated that he was manager of testatrix's ranch for purpose of being released from service in army was improper.

**5. Wills ⊕⇒322—Admitting testimony objected to as a whole, without specific objection to inadmissible portion, was not reversible error.**

Requiring proponent of will charged with under influence to testify that he stated that he was sole manager of testatrix's ranch, and did so in order to be released from army service, was not error, where objected to as a whole, since first statement was admissible.

**6. Wills ⊕⇒164(4)—Relations between one charged with undue influence and testatrix may be shown.**

It is proper to show relations between one charged with practicing undue influence and testatrix.

**7. Wills ⊕⇒164(1)—That proponent charged with undue influence was permitted by testatrix to have sole management of her property after execution of will was relevant and material.**

That proponent was permitted by testatrix to have sole management of her property after execution of will was relevant and material, where proponent was charged with undue influence, since failure to change will after removal of influence would tend to show its existence originally.

**8. Witnesses ⊕⇒379(2)—Where proponent charged with undue influence denied admissible fact that he was sole manager of testatrix's property, previous statement to contrary was material and admissible.**

Where proponent of will charged with undue influence denied admissible fact that after execution of will he was sole manager and controlled testatrix's property, previous statement to contrary was material and admissible.

Littler, J., dissenting.

Appeal from District Court, Callahan County; W. R. Ely, Judge.

Application by Will Johnson for the probate of the will of Mary Johnson, deceased. From judgment in favor of contestants, William Poindexter and others, denying the application, the estate of Mary Johnson appeals. Affirmed.

Wagstaff, Harwell & Wagstaff, of Abilene, Otis Bowyer, of Baird, for appellant.

Scarborough & Wilson, of Abilene, and Ben L. Russell, of Baird, for appellees.

PANNILL, C. J. The purpose of this suit is the probate of the last will and testament of Mary Johnson. On the trial in the district court in response to a special verdict to the effect that, at the time of the execution of the will, the testatrix, was wanting in testamentary capacity and that the execution of the will had been procured by undue influence practiced upon the said deceased by her son Will Johnson, judgment was entered refusing the application to probate the will.

The judgment of the trial court is at-tacked on the ground that the verdict of the jury is contrary to the evidence. Reversible error is also asserted on account of the admission in evidence of the questionnaire executed by the proponent Will Johnson during the war between the United States and Germany. It is unnecessary to discuss the proposition presented by appellant asserting that the jury's finding of want of testamentary capacity was not supported by the testimony, inasmuch as the majority of this court have concluded that the finding of undue influence finds legal support in the testimony. Inasmuch as our brother LITTLER, Associate Justice, is unable to agree to the conclusion stated herein, it may not be inappropriate to say that if the question of want of testamentary capacity was the only issue to be decided, we would have great difficulty in reaching the conclusion that the testatrix was wanting in testamentary capacity at the time she executed the will.

The facts, briefly stated, are that the decedent, Mary Johnson, was the surviving wife of Tom Johnson. A few months after the death of Tom Johnson, his two married daughters, Mrs. Poindexter and Mrs. Likens, contestants here, demanded their share of their father's estate and filed suit for partition thereof, and in this suit a partition was had. This occurred in December, 1915. Contestants' testimony is to the effect that their action in bringing this suit for partition was not opposed by the testatrix. It was shown that the proponent, Will Johnson, was violently opposed to any division of his father's estate. Contestants' evidence showed that the same friendly relation existed between them and their mother before and after the suit as had always existed, except when the proponent, Will Johnson, was present his mother would become embarrassed and uneasy and refuse to talk; that Mrs. Johnson was willing to a partition of the property when she was alone with contestants or out of the presence of proponent, but when proponent was in her presence she would agree with him. After the death of his father, the proponent, Will Johnson, continued to live with and took charge of his mother's business and the entire estate and managed it and controlled it practically to the same extent that his father had done during his lifetime, and that the deceased was at all times under his influence and acceded to his wishes. During the negotiations looking to a partition of the property, Will Johnson never did agree to a division and influenced his brother to oppose it, as well as his mother, and stated to contestants that he wanted this property to be kept together and always in the Johnson name. After the division, proponent, Will Johnson, stated to one of the contestants, his sister, that he wanted her to make a will so that her part of the estate would come back to the Johnson es-

tate if she should die. This contestant refused to do, and proponent, Will Johnson, then told her that he would see that she never would get a thing; that he would see that she never got another damn cent. Shortly thereafter and on the 21st of February, 1916, the will in controversy was executed. The testatrix went alone to the office of her attorney, explaining to her attorney how she desired her will to be drawn, and the will was drawn according to her directions and executed by her in presence of witnesses selected by her. The will bequeathed all her property to her four sons, share and share alike, with the provision that at the death of any of her sons the share or shares of those dying should go to the survivors. Her two daughters were excluded. Prior to the death of Mrs. Johnson, one of her sons died leaving two small children, and this will denies to them the right to participate in her estate. Mrs. Johnson died on the 12th day of May, 1925, over nine years after the execution of this will. Testimony was also before the jury to the effect that the testatrix's mind prior to the execution of the will had been to some extent weakened by sickness and trouble, rendering her susceptible to be influenced by others. After the death of Mrs. Johnson, during a conversation between one of the contestants, Mrs. Likens, and the proponent, Will Johnson, the contestant stated to Will Johnson that the will which had been shown to her was not her mother's will, but was proponent's will, to which Will Johnson replied that he did not have anything more to do with the will than he wanted to have or ought to have; that it was his business to attend to it.

[1] The testimony submitted by proponent showed that there was no undue influence exercised by him over his mother, but that his mother left contestants out of the will because she was angry with them for having filed the suit for partition against her wishes. In considering the sufficiency of the testimony to support the verdict of the jury, we are required by the rules to reject all the testimony contrary to the verdict and to consider only the testimony favorable thereto.

[2] The effect of the jury verdict is to affirm the truthfulness of all the testimony submitted by contestants tending to prove the exercise of undue influence by proponent. When that testimony alone is considered, its sufficiency would seem to be apparent. Clark v. Briley (Tex. Civ. App.) 193 S. W. 419; Degenhardt v. Joplin et al (Tex. Civ. App.) 239 S. W. 692; Rounds v. Coleman (Tex. Civ. App.) 189 S. W. 1088; Leahy v. Timon (Tex. Civ. App.) 204 S. W. 1033; Goodloe v. Goodloe, 47 Tex. Civ. App. 493, 105 S. W. 533; Pendell v. Apodaca et al. (Tex. Civ. App.) 221 S. W. 682.

Appellant contends that no direct evidence of undue influence has been submitted, and

the evidence showing that Mrs. Johnson lived for over nine years after she executed the will, and therefore had full opportunity to revoke it if it did not represent her wishes, the jury could not find from circumstances that undue influence was exercised. This contention cannot be upheld under the authorities cited, as well as a very recent decision of the Supreme Court in the case of Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275. In that case the Supreme Court adopted the opinion of the Commission of Appeals, elaborately reviewing testimony, which we think is no stronger than that in the case at bar, and there held that such evidence raised the issue of undue influence.

The wishes and intentions of Will Johnson, as expressed by him before the will was executed, are accurately reflected in the paper offered for probate. In it the property is kept in the Johnson name to the exclusion of his brother's children, and his threat that his sisters would not receive an "emphasized" cent finds full fruition. The circumstances as well as his admission to his sister that it was his business to attend to the making of the will, and that he did not have any more to do with it than he ought to have had, authorized the jury to point to Will Johnson as the real author of the will.

[3] It will not be necessary to discuss appellant's criticism of the charge of the court in defining "testamentary capacity." If the charge was incorrect, it could not affect the disposition of this appeal, as the will could not be probated, even though the testatrix was of sound mind, if undue influence was practiced upon her.

[4-8] The only other complaint necessary to notice relates to the testimony of the proponent, Will Johnson, who was required to testify that during the year 1917, while the United States was at war with Germany, and when the government was examining those in the draft age, Will Johnson in his questionnaire stated that he was the sole manager of the Johnson ranch in Callahan county, Tex., and that the same was made in effect and for the purpose of getting deferred classification in the selective draft. This question has given us considerable difficulty, as that part of proponent's testimony that he made the statements that he was sole manager of Johnson ranch for the purpose of procuring deferred classification and being released from service in the army was not admissible and was very inflammatory and should not have been permitted to go to the jury. Under the rules governing the disposition of appeals for the Courts of Civil Appeals, we are without authority to reverse on account of the erroneous admission of the testimony referred to, on account of the fact that that part of said testimony to the effect that said Will Johnson stated in his questionnaire that he was sole manager

288 S.W.—37

of the Johnson ranch was admissible, and the bill of exception shows that the testimony was objected to as a whole and no specific objection was lodged to the inadmissible part of the testimony as shown in the bill of exception. It seems to be the settled rule that in cases where undue influence is an issue, the relationship of the one charged with practicing undue influence with the testator is admissible. Willis Millican et al. v. John Millican et al., 24 Tex. 426; Beville v. Jones, 74 Tex. 148, 11 S. W. 1128.

In Clark v. Briley (Tex. Civ. App.) 193 S. W. 419, it was specifically held that where the testator lived for many years after the execution of a will, the relation between the testator and the one charged to have procured the execution of the will by undue influence could be shown to have continued after the execution of the will in order for the jury to determine the issue. The reason is that if all influence was shown to have been removed and the will was not changed, that would be a strong circumstance tending to show that no such influence was exercised in the first instance; but if the association of the one having a controlling influence over the testator was shown to continue this would be a material circumstance. The exercise of influence over the testator after the execution of the will was discussed and considered material in the case of Craycroft v. Crawford, supra. Therefore evidence that after the execution of the will proponent, Johnson, was permitted by his mother to have the sole management of her property, was a relevant and material inquiry. The statement of facts discloses that while on the witness stand the proponent, Johnson, denied that he was the sole manager and had the control of his mother's property. It then became material to show that he had previously stated to the contrary. The bill of exceptions presenting this matter shows that the objection taken was as to the testimony as a whole including that part wherein he stated that he was the sole manager of the Johnson ranch, and no specific objection was urged to the inadmissible part of the testimony offered. It is well settled that a bill of exception which shows a general objection to testimony, part of which is admissible and part not admissible, presents nothing for review in an appellate court. G. H. & S. A. Ry. Co. v. Gormley et al., 91 Tex. 393. 43 S. W. 877, 66 Am. St. Rep. 894; G. H. & S. A. Ry. Co. v. Burnett et al. (Tex. Civ. App.) 42 S. W. 314; Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780; P. & N. T. R. Co. v. Evans-Snyder-Buel Co., 100 Tex. 190, 97 S. W. 466.

Finding no reversible error in the record, judgment of the trial court is affirmed.

RIDGELL, J., concurs.
LITTLER, J., dissents.

LITTLER, J. Not being able to agree with the majority opinion filed in this case, I herewith file my dissenting opinion, giving my reasons for being unable to agree with the majority. A careful analysis of the testimony in this case relating to mental capacity of Mary Johnson will disclose that there is no evidence of any probative force offered on the trial of the case to show want of testamentary capacity at the time she executed the will in controversy, nevertheless the jury found that she did not have sufficient mental capacity to make the will in controversy. The opinion of the majority of the court does not discuss the question of the mental capacity of Mary Johnson, but rather indicates that if the question was necessary that they would hold she had mental capacity to make the will in controversy. Therefore it is not necessary in this dissenting opinion to discuss the evidence relating to the mental capacity of the testatrix further than to state that the evidence, as I view it, is wholly insufficient to predicate a finding of want of mental capacity, and this question should not have been submitted to the jury.

The majority of the court bases the opinion upon the finding of the jury that there was undue influence exerted on the part of Will Johnson to have his mother make the will in controversy. In this conclusion of the majority I cannot agree, and believe that the testimony is wholly insufficient to have authorized the jury to have found undue influence on the part of Will Johnson. Mary Johnson died on the 12th day of May, 1925, over nine years after the execution of the will. The uncontroverted testimony shows that Tom Johnson, her husband, died intestate on the 1st of March, 1915, leaving surviving him his wife, Mary Johnson, and two married daughters and four sons. A few months after the death of Tom Johnson, his two married daughters demanded their share of their father's estate, and Mrs. Poindexter filed suit in the district court of Callahan county, Tex., for partition. Thereafter the property was divided, and the two daughters received their share of their father's estate; the division being made about December, 1915. Mary Johnson, whose will is involved in this litigation, was opposed to the partition and became angry at her two married daughters by reason thereof. This fact is conclusively shown by the record, and as to whether or not she at first consented to the partition is not material in a discussion of this case. She did become very angry at her two married daughters and executed her will in a very short time thereafter and in February following the partition in December. She appeared before her attorney, Judge Otis Bowyer, of Baird, Tex., about the 21st of February, 1916, and dictated to him the kind and character of will she desired made. Will Johnson was not pres-

ent, nor any other person. There is no testimony in the record, as I view it, that shows that any person had ever so much as asked or importuned Mary Johnson to make a will, much less have a controlling influence over her mind in the procuring of the will. In order for undue influence to be sufficient to authorize a jury to declare a will void, the facts must show that the undue influence had a controlling effect on the acts of the testatrix. It is true that undue influence may be shown by circumstances, but the circumstances must be strong enough to justify a conclusion that the undue influence existed. The fact that Will Johnson lived with his mother and attended to her business, and the fact that he opposed the division of the property, is not sufficient to show that he exerted any undue influence on his mother to make the will. There must be some affirmative evidence somewhere showing that he exerted an undue influence over his mother before the jury would be authorized to make such a finding. The law is well settled that mere persuasion is not sufficient to establish undue influence, but the undue influence must have a controlling effect on the acts of the testatrix. Hart v. Hart (Tex. Civ. App.) 110 S. W. 91; Morrison v. Thoman, 99 Tex. 248, 89 S. W. 409; Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98; Barry v. Graciette (Tex. Civ. App.) 71 S. W. 309.

Bearing in mind these authorities, I shall discuss the testimony of the witnesses. The first witness was Lillie Betcher, who testified that Mary Johnson was of unsound mind; but on cross-examination her testimony was sufficient to clearly show that Mary Johnson did have sufficient mind to make a will. She did testify that she had a conversation with Will Johnson after his mother died, which was in May, 1925, and that she tried to get the boys to divide with the girls and he said they were going to stand by the will. She testified to no act of Will Johnson prior to the execution of this will that would indicate undue influence.

Albert Betcher testified that Mrs. Johnson was of unsound mind, and he based it upon the fact that she made the kind of a will she did and on no other ground. He testified to no act of undue influence.

Maryette Poindexter testified to no material fact, unless it was her testimony to the effect that when Will Johnson came around there would be a difference in attitude of Mrs. Johnson and that she appeared less friendly. Her testimony is almost entirely confined to matters that occurred after the death of Mrs. Johnson.

J. W. Slough testified as to the mental capacity of Mrs. Johnson, but as to no facts relating to undue influence.

Mrs. Farmer testified as to the mental condition of Mrs. Johnson, that at the time of the division, back in 1915 when the matter first came up, Will Johnson wanted all his father's estate to be kept in the Johnson name. Her testimony, however, utterly fails to show mental incapacity, but rather to the contrary.

The contestants, Mrs. Poindexter and Mrs. Likens, testified, but they testified to no facts that would authorize a jury to find undue influence. The only testimony of Mrs. Poindexter and Mrs. Likens that would be material on the question of undue influence is the testimony of Mrs. Likens to the effect that Will Johnson stated, after the death of Mary Johnson, that he had nothing more to do with the will than he ought to have had, and her testimony to the effect that while they were discussing the division after the death of Tom Johnson, he stated he would see that they never got another damn cent. This testimony is wholly insufficient to show undue influence, unless it be coupled with some affirmative act on the part of Will Johnson to show that he actually did something to cause Mary Johnson to make the will, and that this was a controlling factor in her making the will. When it is considered that Mary Johnson went before her attorney without any one being with her and that she dictated the will and let it remain as it was for nine years, and until her death, the conclusion is inevitable that no such influence was exerted on her by any one that would void this will. The right to make a will and dispose of one's property as he desires should not be set aside on such flimsy testimony.

I also believe the court committed material error in permitting the contestants to offer in evidence the questionnaire of Will Johnson, as shown by bills of exception in this case. The questionnaire offered in evidence was the questionnaire filled out by Will Johnson at the time the United States was at war with Germany, and his questionaire shows that he claimed exemption on account of the fact that he was the manager of the Johnson farm in Callahan county, Tex. This questionnaire was made out some 18 months after the execution of the will, and appellants objected to such testimony on the ground that it was irrelevant, inflammatory, and did not tend to prove any issue in the case, and was not admissible as impeaching testimony for the reason that it was on an immaterial matter. The court admitted the testimony, but attempted to limit its effect to the question of impeaching the witness Will Johnson. In view of the fact that the testimony was of a very inflammatory nature and calculated to prejudice the jury and to be used by the contestants in argument to the jury, the court should not have admitted such testimony unless it was clearly admissible. I do not believe the qualification of the court could remove from the mind of the jury the fact that the witness had tried to evade military service, and the

case should be reversed on this point. It was not material as to whether or not Will Johnson was manager of the ranch at the time the questionnaire was made, as the will had been executed for more than 18 months prior to that time. The questionnaire was not admissible for any purpose, not even for impeaching purposes.

I therefore am of the opinion that the evidence was insufficient to justify the verdict of the jury, and that the admission of the questionnaire was prejudicial, and that the case should be reversed and remanded.