**DOUGLAS et al. v. SKIDMORE et al.**

**No. 1554.**

Court of Civil Appeals of Texas. Eastland.

May 8, 1936.

Rehearing Denied June 5, 1936.

Smith & Eplen, of Abilene, for appellants.

Stinson, Hair, Brooks & Duke, of Abilene, for appellees.

GRISSOM, Judge.

This is an appeal from a will contest tried de novo in the district court after having

been admitted to probate in the county court. The plaintiffs, or contestants, alleged, first, that the will was not executed by the deceased, Mrs. M. A. Douglas; second, if executed, that at the time of the execution thereof Mrs. Douglas did not possess testamentary capacity; third, that the execution of the instrument as her last will was procured by the undue influence of three of her sons, M. L., O. R., and J. L. Douglas.

The issues of testamentary capacity and undue influence were submitted to the jury. The jury answered, first, that Mrs. Douglas was possessed of testamentary capacity at the time of the execution of the will; and, second, that she acted under undue influence in the execution of the will.

In accordance with the finding of undue influence, the court entered judgment in favor of the contestants and denied probate of the instrument.

■ The first two propositions of appellants, who were the defendants, or proponents of the will, in the trial court, are directed at the alleged insufficiency of the pleadings to charge undue influence. Contestants' pleadings alleged that the will was signed by Mrs. Douglas when she was seriously ill and suffering intense pain; that she had long been so suffering at the time of the execution of the will; that at such time her mind had become impaired by disease and the effect of narcotics administered to relieve pain. The specific allegations with reference to undue influence were as follows: "That said instrument of date June 3, 1933, is not the will of the said Mrs. M. A. Douglas but is the will of said M. L. Douglas, O. R. Douglas and J. L. Douglas and the purported execution of said instrument of date June 3, 1933 by the said Mrs. M. A. Douglas as her will, if she then had mental capacity to make a will, which is not admitted but in all things denied, was wholly brought about by the undue influence of the said M. L. Douglas, O. R. Douglas and J. L. Douglas. That if the said Mrs. M. A. Douglas did have mental capacity to make a will on June 3, 1933, which is not admitted but in all things denied, she was unduly influenced to execute and sign said instrument of date June 3, 1933 by the compulsion, duress, threats and arguments of and to avoid the importunities of the said M. L. Douglas, O. R. Douglas and J. L. Douglas and yield to such importunities, threats, duress and compulsion and allow the mind of the said Mrs. M. A. Douglas, on account of the feebleness of her own

mind to take the place of their own mind and to guide her in the making of said purported will and to control her in the making of said purported will without in fact herself assenting thereto. That such importunities, undue influence, threats, duress and compulsion are of such character and strength as to overcome and did overcome the volition and desire of the said Mrs. M. A. Douglas and her free agency in making a will was destroyed because of her inability to resist weakness, disease and approaching death, the insistent importunities, compulsion, duress and threats of the said M. L. Douglas, O. R. Douglas and J. L. Douglas and on account of her desire for peace and quiet,"—to which pleading the proponents of the will presented the following exceptions: "(a) Defendants especially except to all of paragraph D wherein it seeks to allege undue influence, duress, etc., for the reason that it is not alleged how the defendants duressed, threatened, used undue influence or compelled the said Mrs. M. A. Douglas to execute said will; (b) no facts are pleaded which would apprise defendants of what plaintiffs seek to prove thereunder and (c) said pleadings are the conclusions of the pleader. Wherefore they pray that such pleadings be stricken and held for naught."

It is evident that the allegations in the quoted paragraph charging undue influence are somewhat confused, possibly due to typographical or clerical error, but, we think, the allegations contained in said paragraph, reading as follows, "and yield to such importunities, threats, duress and compulsion and allow the mind of the said Mrs. M. A. Douglas on account of the feebleness of her own mind, to take the place of their own mind," was intended to charge that Mrs. Douglas yielded to such importunities, threats, duress, and compulsion, and allowed the minds of the said M. L., O. R., and J. L. Douglas, on account of the feebleness of her own mind, to take the place of her own mind, and that the context requires such construction.

The case of Mayes v. Mayes (Tex.Civ. App.) 159 S.W. 919, 923, was evidently used as a pattern in drawing the pleading complained of. The language of the pleadings alleging undue influence found in that case is almost identical with the allegations of undue influence in the instant case with some amplifications in the present pleading. In the Mayes Case, Chief Justice Pleasants, of the Galveston Court of Civil Appeals,

approved the allegations of undue influence in the following language:

"We think the allegations of the petition charging that the execution of the will was procured by undue influence allege facts sufficient to show undue influence and the trial court did not err in overruling appellant's exceptions to the petition.

"The term 'undue influence,' while easily comprehended and understood, is somewhat difficult to define; but if the importunities and arguments used by appellant to induce the deceased to make the will were of such character and strength, in view of the feeble condition of the mind and body of the deceased as to overcome his volition and free agency, undue influence would be shown, and it was not necessary to allege what the arguments were or in what form the importunities were presented. In the very nature of things this would rarely ever be known by the contestants of the will."

If the decision in the Mayes Case is correct and the law, then the allegations of undue influence in the instant case were sufficient. This case has been much cited by the courts of Texas, but not on the point here in issue. So far as we have been able to find, the particular holding here involved has never been either commended or condemned, but apparently it has not been overruled.

In Beckham v. Cayton (Tex.Civ.App.) 262 S.W. 840, 842, is found the following quotation from 31 Cyc. 684: " 'Only ultimate, not probative, facts, should be alleged; hence, if the proof of an ultimate fact requires the prior proof of one or more probative facts evidence thereof cannot be excluded on the ground that such facts are not alleged. Any evidentiary fact which bears directly upon the issues raised by the pleadings is admissible without being pleaded; and if a party states only matters of evidence in his pleadings and not the ultimate fact on which he relies, the court will not allow proof of the fact relied on unless it follows as a necessary legal consequence from the evidentiary facts stated.' "

Declarations of the general rule requiring the allegation of the ultimate rather than the evidentiary or primary facts may be found in Wells v. Fairbank, 5 Tex. 582; Sutor v. Wood, 76 Tex. 403, 13 S.W. 321; Griffin v. Chubb, 7 Tex. 603, 58 Am. Dec. 85, and 33 Tex.Jur. § 22, p. 436. The allegations of undue influence by the contestant in the case of Scott v. Townsend et al. (Tex.

Civ.App.) 159 S.W. 342, 345, are in legal effect substantially like the instant allegations. Practically the same exceptions were urged to the allegation of undue influence there as here, and the allegations were held sufficient. This case was reversed by the Supreme Court, in an opinion by Chief Justice Phillips (Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138), but on a question of the admissibility of evidence, and the holding of the Court of Civil Appeals that the allegations of undue influence were sufficient was not disturbed.

We believe that the weight of authority sustains the action of the trial court in holding that the allegations of undue influence were not subject to the exception urged. Townes Texas Pleading (2d. Ed.) p. 385.

Appellants, by their third proposition, present the contention that the verdict of the jury is based solely on the declarations of the testatrix; that there was no competent testimony supporting the finding of undue influence, and, consequently, no legal basis for the judgment rendered.

The testatrix was 73 years of age at the time of the execution of the will and at the time of her death. There was testimony to the effect that about the time of the execution of the will, either on June 3, 1933, or later, that Mrs. Douglas was very sick and spent most of her time in bed; that occasionally she took narcotics and hypodermic injections; that on June 3, 1933 (which is the date actually found on the will, although the actual date of its execution was disputed), she obtained a doctor's prescription containing some narcotic; that she was equally fond of her children; however, usually when she became worse she would send for her daughter Mrs. Skidmore, who would then come and stay with her; that she showed great affection for Mrs. Skidmore; that during most of her illness Mrs. Skidmore's daughter stayed with and cared for Mrs. Douglas; that Ben (T. B.) Douglas lived with his mother until June 19, 1933, at which time he married. (The sons, other than M. L., O. R., and J. L. Douglas, were bequeathed each the sum of $5. The daughters, Mrs. Skidmore and Mrs. Sibley, were bequeathed the household furniture, etc., valued in the inventory at the sum of $50. These daughters also shared equally with the three favored sons last above named in the personal property, valued in the inventory at $986. The three favored sons were devised all the real estate consisting of 161

acres, valued in the inventory at $2,415, with a charge against such devise of $497.-55. Said three sons were also appointed independent executors in the will.)

There was testimony as to the alleged undue influence of the three favored sons, in substance, as follows: That said sons were at the home of their mother Mrs. Douglas frequently from February to June, 1933, inclusive, and had the opportunity to exert the influence charged; that they had conversations with the testatrix as shown by the following testimony of Mrs. Thornton:

"Q. During the time that you were there, either February, March, April, May or June, I will ask you to state whether or not, Mr. O. R. Douglas, M. L. Douglas or J. L. Douglas was there? A. Yes, they were there a lot.

"Q. State whether or not you had any occasion to notice them being in the room, talking to your grandmother? A. Well, a number of times they were. I wasn't with Grandmother when anyone else was there; I usually left the room.

"Q. Did you hear any of the conversations with them? A. I did.

"Q. What did you hear them talking about? A. They wanted Grandmother to let them have the say of who came there.

"Q. Who was that now? A. Marve.

"Q. Wanted him to do what? A. Wanted her to let him say who came there to see her.

"Q. What did she say? A. she told him no.

"Q. Did you hear any further conversation? A. They wanted Grandmother to make her property over to them.

"Q. What did she say to that? A. She told him she wasn't going to do it; she thought as much of one child as she did the other.

"Q. Did she say anything about going to make a will? A. She said she was positively not going to make a will."

There were many declarations of the deceased to the same effect as the foregoing testimony. There were declarations of the deceased to the effect that the favored three sons were demanding of Mrs. Douglas that she require her son Ben Douglas to execute a note for the money that Ben owed her; that she thought as much of one child as she did of the other; and that the sons, other than those three favored in the will, and their wives, were just as welcome at the home of the deceased as were the favored three and their families; that she wanted all the children and their families to come and feel at home; that she cried and said, "They keep wanting me to have things fixed"; that two of the favored sons "just keep on after me; they want me to make over my property to them, or they will quit coming." "I won't do that; I think just as much of one as the other, and when I am gone I want them all to have my property." That after one of the sons favored in the will and his family would leave after a visit with deceased she would say, "Well, the storm is over, now we can do what we want to." Deceased declared that the boys (meaning those three favored in the will) had been wanting her to make a will; that they wanted deceased to turn over everything to them; that the boys had been fussing at her, that it was running her crazy; that she could not sleep; that she was not well, and there was testimony that she would talk about these matters and cry. There was testimony to the effect that she was nervous, hysterical, forgetful, sick, and weak in mind and body.

There is some uncertainty as to the date on which the will was actually executed. There is positive testimony that the will was executed by deceased on June 3, 1933, and there is positive testimony that the will was not then executed. Buchanan et al. v. Davis et al. (Tex.Civ.App.) 300 S.W. 985; Buchanan et al. v. Davis et al. (Tex.Com. App.) 12 S.W.(2d) 978, 979, rehearing denied (Tex.Com.App.) 15 S.W.(2d) 562; Craycroft v. Crawford (Tex.Com.App.) 285 S.W. 275; Rounds v. Coleman (Tex. Civ.App.) 189 S.W. 1086; McKay v. McKay (Tex.Civ.App.) 189 S.W. 520; Trezevant v. Rains et al., 85 Tex. 329, 23 S.W. 890; Campbell et al. v. Barrera et al. (Tex.Civ. App.) 32 S.W. 724; Johnson's Estate v. Poindexter (Tex.Civ.App.) 288 S.W. 575; Goodloe v. Goodloe, 47 Tex.Civ.App. 493, 105 S.W. 533; Johnson v. Brown, 51 Tex. 65; 17 Tex. Jur. § 267, p. 636; Annotation 79 A.L.R. 1447 et seq.; 28 R.C.L. § 92, p. 137 et seq.; Simkins Administration of Estates in Texas, (3d Ed.) p. 494.

We believe that the testimony, circumstantial and otherwise, sufficient to make the charge of undue influence an issue for the jury. The jury has determined that question of fact against appellants, and the finding requires the judgment rendered.

The court did not err in overruling defendants' exceptions to the court's definition of undue influence. If defective, we think it placed too great a burden on the plaintiff and was not harmful to defendants. 31 C.J. § 1, p. 1182 et seq. The instructions requested were in the nature of a general charge and should not have been given. Wallace v. Johnson (Tex.Civ.App.) 39 S.W. (2d) 140, 141; Terrell Wells Health Resort, Inc., v. Severeid (Tex.Civ.App.) 95 S.W.(2d) 526.

All of appellants" assignments have been carefully considered. We are indebted to their counsel for an excellent brief, but are not convinced that reversible error is shown. The assignments are overruled, and the judgment is affirmed.